## Grim et al. *versus* Thomas Iron Co.

A. sold iron ore to B., which he mined under a lease from C., on which
he agreed to pay him royalty therefor; before all of the ore was delivered, B. discovered that it was mined from lands to which he claimed
title; he therefore agreed with A. that he would pay C. the royalty, if
the land from which the ore was mined belonged to him, if not, he
would be required to pay nothing. In an action in assumpsit by C.
against B. to recover the royalty retained under the agreement between
A. and B., *Held* (*a*) that it was competent for B. to set up his own title
as a defence; (*b*) that, according to the terms of the agreement between A. and B., and, under the undisputed facts in the case, B. was
not liable to any person.

February 28th, 1887. Before MERCUR, C. J., GORDON,
PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Berks county:*
Of January Term 1886, No. 245.

Assumpsit by Seth K. Grim for the use of David K. Grim,
Peter K. Grim, Seth K. Grim, Jesse Kline and Henrietta
Kline his wife, against The Thomas Iron Company, to recover,
as stated in the narr., " the price and value of iron ore mined
upon the premises of the plaintiffs, for the royalty of the
same." Plea, non-assumpsit payment with leave.

The following are the facts of the case as they appeared on
the trial before SASSAMAN, J.;

On the 13th of November, 1860, Tilgham Schaeffer granted
to The Thomas Iron Company the exclusive right to all the
iron ore contained in a certain tract of land containing ten
acres, more or less, situate in Maxatawny township, etc., at a
royalty of twenty-five cents a ton. On the 25th of March,
1861, Samuel Thomas (in behalf of The Thomas Iron Company) contracted in lieu of royalty to pay him a round sum of
fifteen hundred dollars for all the iron ore in the tract.

After the sale and transfer of the iron ore Tilgham Schaeffer's interest in the premises was sold under proceedings in the
Orphans' Court, and purchased by Seth K. Grim and Daniel
Clader. They believed that through this sale they acquired a
good title to the iron ore as well as to the surface. In 1869
they brought ejectment against Thomas *et al.* for the iron ore.
The case was tried in 1875, and resulted in a verdict for the
defendant. Grim and Cloder sued out a writ of error, but on

the 24th of March, 1879, the Supreme Court affirmed the judgment.   See Cloder *v.* Thomas, 8 Norris, 343.

On the 7th April, 1879, Seth K. Grim made a lease of the iron ore under a small corner of this tract to one Jonathan Bear.   Subsequently Bear began to mine iron ore, and sold some of it to The Thomas Iron Company.   Before it was all delivered, and before the time for payment, The Thomas Iron Company discovered that it had been mined on a corner of the Schaeffer tract, the iron ore of which belonged to them.   They then made an agreement with Bear " that they would retain the royalty of the ore, and if Grim owned the land they would pay him, if not, they had nothing to pay."

Grim then set up a claim that the title to the tract belonged to his father's estate.   This action *in assumpsit* in the name of Seth K. Grim, to the use of his brothers and sisters and himself, was brought "for, as stated in the narr, the price and value of iron ore mined upon the premises of the plaintiffs for the royalty of the same."

The evidence offered to sustain the action was the lease of Grim to Bear, evidence of the quantity sold by Bear to The Thomas Iron Company, and their agreement that "they would retain the royalty, and if Grim owned the land they would pay him, if not, they had nothing to pay."

Bear in this lease covenanted to render an account of iron ore received at the expiration of six months, and "thereupon agree to pay for each and every ton of said iron ore the sum of fifty cents gross weight (2240 pounds) for each and every ton of iron ore which is taken out; as ground leaf they agree to pay fifty cents as before mentioned and payable every six months at the furnace where said ore is shipped to, that the said Seth K. Grim to draw the money as ground leaf from said furnace."

During the trial the defendant made the following offer of evidence:

Defendant proposes to prove by witness that he knows the tract, lives there upon it, is sixty-two years old, was born there, his father owned it before him, that the place where Bear mined ore was a part of the Schaeffer tract, and was always in their possession, to be followed by evidence of a recorded grant of ore to Samuel Thomas.

This for the purpose of showing that the title to the tract is in Samuel Thomas and not in the plaintiff, and that the royalty is not payable to the plaintiff.

Objected to :

1. As irrelevant and immaterial.

2. The title to the land upon which the ore was mined cannot be inquired into.

[Grim v. Thomas Iron Co.]

Offer admitted, bill sealed for plaintiff. (First assignment of error.)

The defendant requested the court to charge: That under all the evidence.in this case the verdict must be for the defendant. Affirmed. (Second assignment of error.)

In the general charge the court instructed the jury as follows: I can readily see how the title to lands can be questioned in an action of ejectment with an issue joined on a plea of not guilty, or in an action of trespass *quare clausum fregit* on an issue joined by the plea of *liberum tenementum.* In the determination of such an issue many questions for mesne profits or damages, may settle injury to lands either by acts of trespass or mere acts of use and enjoyment, in violation of the rights of him who has the right of title and possession. [This is an action of *assumpsit* to recover money assumed to be due for royalty arising out of the working of an ore lease to which the plaintiffs were neither party nor privy, while the title and the royalty is claimed by other parties which I believe to be fatal to the plaintiff's claim here. These views lead us to affirm the defendant's points, and by this affirmation your verdict is directed in favor of the defendants.] (Third assignment of error.)

Verdict for the defendants and judgment thereon, whereupon the plaintiffs took this writ and filed *inter alia* the assignments of error above shown.

*J. H. Marx* (*Frank R. Schell* with him), for plaintiffs in error.—That the plaintiffs had a right to recover in this form of action is too clear for argument. The promise of the defendant need not be made immediately to the plaintiff himself, for if made to one person for the benefit of another the latter may, notwithstanding, maintain the action: 2 Lev., 210; Cowp., 437; Wynn v. Wood, 1 Outerbridge, 216.

This court has uniformly discountenanced all proceedings in equity to try the title to lands. Your honors have called such bills, "ejectment bills" and have always dismissed them. In Meck's Appeal, 1 Outerbridge, 313, Mr. Justice Paxson states the case in a nutshell: "The object of this proceeding is patent. With the agreement destroyed by a decree in equity, the road will be open for a recovery of possession by an action of ejectment. The defendants could not then use it as a shield to defend their possession. In other words, this bill is a mere tender to a writ of ejectment."

So in Richards v. Cherrington, 12 W. N. C., 140, Mr. Justice Gordon in concluding his opinion says, "the court might have dismissed it as an ejectment bill." In this particular the case is covered by Long's Appeal, 11 Norris, 171. Now if a bill in

equity will not avail to destroy a man's title to real estate, much less should it be tolerated in an action of assumpsit.

Under the decision in Lehmann *v*. Kellerman, 15 P. F. Smith, 489, it is impossible to see how the evidence offered by the defendants was admissible. It was there held that "in an action of replevin for grain cut and carried away from the land of which the plaintiff had actual adverse possession, the defendant could not defend on his alleged better title to the land. In such case the defendant's remedy would be by an ejectment and for mesne profits.

*George F. Baer* and *Jeff Snyder* for defendants in error.— The objections to a recovery as the case stood were:

1. That the parties are suing, in the character of owners of premises on which the iron ore was mined, a defendant who claims the iron ore by a paramount title.

This was virtually to try the title to the land, not incidentally, but directly as the heart of the action. That this may not be done is clearly established by many cases. They are all referred to in Green *v*. Ashland Iron Co., 12 Smith, 102. But aside from this they neither showed possession nor a right to possession.

2. If the suit were to be viewed as a suit by Grim to recover money belonging to them in the hands of a third person, the evidence utterly failed to establish any such facts.

The only contract about the iron ore was between The Thomas Iron Company and Bear. They only agreed with Bear to pay Grim provided his title to the land was good, as against them. If Bear had no right to make such a contract, Grim's remedy was against him. He had no cause of action against The Thomas Iron Company, unless he was willing to accept the terms of Bear's agreement with them, and show a title to the royalty superior to that of The Thomas Iron Company. Even then it would be necessary to make Bear the legal plaintiff.

Bear's occupancy was a mere trespass. The defendants had that constructive possession which the law casts upon the owner —the only kind of possession which can well be taken where the surface belongs to another. They could have maintained trover or replevin for any ore taken away; for it has been decided that such "an action does lie in favor of the owners in possession, actually or constructively, against a tort-feasor, or one who has no right of possession, who enters casually or temporarily:" Brewer *v*. Fleming, 1 P. F. Smith, 102. If we had been suing to recover the royalty, it would have been necessary under the ruling of Clement *v*. Wright, 4 Wright, 250, to show title, not for the purpose of trying it, but to show the

constructive possession which flows from it.  It was therefore clearly competent to defend a suit by showing our title and possession.

The opinion of the court was filed March 14th, 1887.

PER CURIAM.—It is true there is a class of cases in which a third person may maintain an action on a promise made to another.  Hence it has been held if one deliver money or personal property to another under the promise of the latter to deliver it over to a third person who has a beneficial interest therein, or to convert it into money and pay him the proceeds, the third person may maintain an action therefor against the promissor: Wynn's Administrator *v.* Wood, 97 Pa. St., 216. That however is for a breach of the contract according to its terms.  Here the attempt is to maintain an action on a conditional contract, according to the terms of which, and under the unquestioned facts, the defendant is not liable to any person. There was therefore no error in giving binding instructions to the jury.

Judgment affirmed.