627 A.2d 797

**INSURANCE CO. OF the STATE OF PENNSYLVANIA, Appellant,**

v.

**William S. MILLER.**

Superior Court of Pennsylvania.

Argued March 11, 1993.

Filed July 8, 1993.

520

Glenn M. Campbell, Philadelphia, for appellant.

Kent D. Mikus, Lancaster, for appellee.

Before CAVANAUGH, JOHNSON and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from the August 26, 1992 order denying appellant, Insurance Company of the State of Pennsylvania, post-trial relief and entering a final decree in favor of appellee, William S. Miller. Appellant raises the following issues on appeal:

I. WHETHER THE TRIAL COURT'S FINDING THAT THERE WAS NO KNOWING AND INTELLIGENT WAIVER OF THE HIGHER LIMITS UNINSURED/UNDERINSURED MOTORIST COVERAGE BY DEFENDANT MILLER'S EMPLOYER, KAUFFMAN MOTOR EXPRESS, INC., THUS FINDING ONE MILLION DOLLARS OF UNINSURED/UNDERINSURED COVERAGE APPLICABLE, IS SUPPORTED BY THE WEIGHT OF THE EVIDENCE.

II. WHETHER THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA WHO WAS PAID PREMIUMS BY THE EMPLOYER FOR THE STATUTORY MINIMUM UNINSURED/UNDERINSURED COVERAGE IS ENTITLED TO CREDIT AGAINST WORKMEN'S COMPENSATION BENEFITS PAID TO MILLER FOR INJURIES ARISING OUT OF THE SAME ACCIDENT FOR WHICH HE IS CLAIMING UNINSURED/UNDERINSURED MOTORIST COVERAGE.

Appellant's Brief at 3. We affirm.

Appellee, an employee of Kauffman Motor Express, Inc. ("Kauffman"), was injured in an automobile accident during the course of his employment. Appellee obtained $25,000 from the insurance company of the negligent driver and thereafter sought underinsured motorist coverage under his employer's insurance policy with Insurance Company of the State of Pennsylvania (appellant). The named insured on the policy was Richard L. Epler, Jr., the president of Kauffman. Appellant initiated a declaratory judgment action contending that Kauffman had waived uninsured/underinsured motorist coverage in the amount of one million dollars bodily injury coverage and that the limits of underinsured motorist coverage under the policy are $15,000.[1] On October 9, 1991, a board of arbitrators awarded appellee $375,000. Following a bench trial, the Court of Common Pleas of Lancaster County upheld that award. Appellant filed post-trial motions which were denied on August 26, 1992. This timely appeal followed.

Appellant first asserts that the trial court's finding that appellant's employer, Kauffman, did not knowingly and intelligently waive the higher limits of uninsured/underinsured motorist coverage is not supported by the weight of the evidence. We disagree.

■ When reviewing whether a verdict is against the weight of the evidence, a new trial will be granted only where

1. Appellant later raised this amount from $15,000 to $35,000, the statutory minimum.

the jury's verdict was so contrary to the evidence as to shock one's sense of justice and "to make the award of a new trial imperative, so that right may be given another opportunity to prevail." *Thompson v. City of Philadelphia*, 507 Pa. 592, 598, 493 A.2d 669, 672 (1985); *Hauseknecht v. Walters*, 404 Pa.Super. 85, 90, 590 A.2d 20, 23 (1991).

In 1984, Pennsylvania enacted the Motor Vehicle Financial Responsibility Law ("MVFRL") which requires insurance companies to provide uninsured and underinsured motorist coverage in amounts equal to the bodily injury liability coverage except where the named insured requests in writing coverage in amounts less than the limits of liability for bodily injury. 75 Pa.C.S. §§ 1733, 1734.[2] The insurance company must inform the named insured that he may reject uninsured or underinsured motorist coverage by signing a specific written rejection form. 75 Pa.C.S. § 1731(b), (c).[3] In addition, § 1791 of the MVFRL provides the method of apprising an insured of the benefits and limits available pursuant to the statute. That section states that:

> [i]t shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least ten-point type is given to the applicant at the time of application for original coverage or at the time of the first renewal after October 1, 1984, and no other notice or rejection shall be required. . . .

**2.** The named insured may waive full uninsured or underinsured motorist coverage, as long as the amount obtained is at least equal to the minimum statutory levels for bodily injury liability coverage. 75 Pa. C.S. § 1734.

**3.** The statute further provides that:
> [i]nsurers shall print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and locations. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits.

75 Pa.C.S. § 1731(c.1).

*Id.* Section 1791 then sets out the precise language required for the notice which informs insureds of the insurers' statutory responsibility to make certain levels of benefits available and specifies the required amounts. Finally, § 1791 provides that "[y]our signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits you have selected." *Id.*

■ If the insurer strictly follows § 1791 there is a conclusive presumption that the waiver is valid. However, if the insurer does not follow § 1791 then it must establish waiver under the principles enunciated in *Johnson v. Concord Mut. Ins. Co.,* 450 Pa. 614, 300 A.2d 61 (1973).[4] *See Byers v. Amerisure Ins. Co.,* 745 F.Supp. 1073 (E.D.Pa.1990), *aff'd,* 935 F.2d 1280 (3d Cir.1991) at 1076 (applying *Johnson* ). In *Johnson,* our Supreme Court established that the waiver must be "affirmatively expressed in writing by the insured," which must evidence "an express agreement or acquiescence on the part of the insured to delete or relinquish this protection. The statutory mandate may be complied with only by including uninsured motorist coverage or by an affirmatively expressed rejection in writing by the insured. Nothing less will satisfy the statutory obligation." *Id.* at 621, 300 A.2d at 65.

In the instant case, the insurance policy issued by appellant provides maximum liability coverage in the amount of one million dollars. The insurance policy did not include either the notice required by § 1791 or the form for rejection or reduction of uninsured or underinsured motorist benefits set forth in § 1731. Nor does the policy specify the uninsured or underinsured motorist benefit coverage limits.[5] Thus, appellant has not complied with the specific statutory requirements of the MVFRL for reducing underinsured or uninsured motorist coverage.

4. We note that the *Johnson* decision preceded the enactment of the MVFRL.

5. In fact, the only amount of insurance coverage specified was the one million dollar figure listed as the limit for liability insurance. *See* Complaint Exhibit A.

■ Appellant, however, points to an appendix to the policy, referred to as "Endorsement # 1." The Endorsement, entitled "Personal Injury Protection Endorsement" and executed by Richard Epler, President of Kauffman, provides

> In those states where by statute the Insured is required to purchase Uninsured Motorist Coverage, Underinsured Motorist Coverage or Personal Injury Protection Coverage and does not have the right to reject such coverage, the Company agrees to provide the coverage on the form currently approved for use in the applicable jurisdiction. The limits of liability as respects this endorsement shall be the minimum limits of liability acceptable by statute in the applicable jurisdiction.

> In those jurisdictions that allow an Insured to reject his right to Uninsured Motorist Coverage, Underinsured Motorist Coverage or Personal Injury Protection coverage, by its signature affixed hereto, the Insured evidences its intent to so reject.

*See* Complaint, Exhibit E. Appellant contends that this Endorsement in conjunction with the testimony of witnesses testifying on behalf of appellant demonstrate that Kauffman made a valid election of lower underinsurance motor vehicle coverage limits. We disagree.

In the instant case, no written form was introduced into evidence indicating that Kauffman was informed of the available benefits prior to his alleged waiver of those benefits. Thus, his signature on Endorsement # 1 by itself does not constitute a waiver. This case is similar to *Byers v. Amerisure Ins. Co.*, 745 F.Supp. 1073 (E.D.Pa.1990), *aff'd*, 935 F.2d 1280 (3d Cir.1991), in which the federal district court, applying Pennsylvania law, held that an insured's signature did not ratify the reduced uninsured and underinsured motorist coverage provided in the insurance policies and the insured did not waive his rights under the MVFRL. The court reasoned that the insurer did not follow the requirements for waiver of coverage because the application did not contain the statutorily-required language and there was no evidence that the

insured was otherwise informed of the available benefits. The court concluded that the insured had not made a conscious decision to reject the enhanced coverage which was available to him.

 Moreover, appellant's attempt to prove through the verbal testimony of three witnesses that Richard Epler, the named insured was made aware of the available benefits and that he knowingly waived them must fail. Appellant offered the testimony of its insurance agent, Kauffman's office manager, and an account executive of Kauffman's previous insurance company. However, the trial court found, and we agree, that the testimony of appellant's witnesses was equivocal at best and was insufficient to prove that Kauffman rejected underinsured motorist coverage.[6] Accordingly, the absence of the statutorily-mandated language in the policy at issue and the insufficient testimony of appellant's witnesses support the trial court's conclusion that appellant did not meet its burden of proving that Kauffman elected to reduce or reject underinsured motorist coverage.

6. The trial court stated its reasoning as follows:

For reasons known only to plaintiff, plaintiff chose not to introduce any testimony by Mr. Epler, the one who actually signed the policy in question on behalf of Kauffman. Instead, plaintiff presented testimony of Linda Sten, an administrator at Kauffman who testified that she spoke with the plaintiff's insurance agent, Tim Good, and advised Mr. Epler which policy to choose. (N.T. 40–41). As to whether Mr. Good informed her that by virtue of signing the endorsement she was reducing Kauffman's underinsured motorist coverage to $35,000, Ms. Sten testified that she "can't remember." (N.T. 40). She also testified that she "probably had some idea of what it was." (N.T. 42). And that she "couldn't say whether she understood there was a $35,000 limit on the policy." (N.T. 43). In our view, Ms. Sten's testimony is equivocal at best on the issue of whether she knowingly and intelligently executed the waiver in question.

The only other significant testimony presented by plaintiff was that of its insurance agent, Timothy Good. Although Good testified that he presented Ms. Sten the waiver in question and explained it to her, his memory too proved to be faulty as to how these events transpired. (N.T. 32). Accordingly, in light of the stringent burden placed upon plaintiff to prove a knowing and intelligent waiver, we resolved credibility issues against the plaintiff and found that no knowing and intelligent waiver occurred.

Trial Court Opinion, 8/26/92, at 6–7.

■ Appellant next argues that it is entitled to credit against workmen's compensation benefits paid to appellee for injuries arising out of the same accident for which he received underinsured motorist coverage. This claim is also meritless.

75 Pa.C.S. § 1735 provides:

The coverages required by this subchapter shall not be made subject to an exclusion or reduction in amount because of any workers' compensation benefits payable as a result of the same injury.

Our Supreme Court recently interpreted § 1735 as follows:

What section 1735 says, then, is that when an insurance company writes a policy concerning underinsured and uninsured motorists, it may not write coverages which reduce the amount it will pay under such policies because the person to be paid is also receiving workers' compensation benefits for the same injury.

*Hackenberg v. Transp. Authority*, 526 Pa. 358, 367, 586 A.2d 879, 883 (1991).[7] Accordingly, appellant's argument must fail.

For the foregoing reasons, we affirm the August 26, 1992 order.

Order affirmed.

---

**7.** Appellant does not dispute this but instead merely reiterates that a credit against worker's compensation benefits for coverage in excess of $35,000.00 is "only fair given that premiums were never paid for by Miller's employer, Kauffman, for any additional coverage." We have already rejected the basis of this argument in our resolution of the first issue.