**NATIONAL UNION FIRE INSURANCE CO., Appellant,**

v.

**IREX CORPORATION and Barbara Devenny, Personal Representative of the Estate of George Devenny, Deceased, and Barbara Devenny, in Her Own Right.**

Superior Court of Pennsylvania.

Argued Nov. 12, 1997.

Filed May 18, 1998.

Timothy Costello, Philadelphia, for appellant.

Gregory J. Kelly, Philadelphia, for appellee.

Before CIRILLO, President Judge Emeritus, and SCHILLER and HOFFMAN, JJ.

CIRILLO, President Judge Emeritus:

National Union Fire Insurance Co. (National Union) appeals from the order entered in the Court of Common Pleas of Delaware County granting summary judgment in favor of Appellees Barbara Devenny, individually and as the personal representative of the estate of her deceased husband, George Devenny, and Irex Corporation (Irex). We affirm.

National Union filed the underlying declaratory judgment action to determine whether it had a duty to provide uninsured motorist (UM) benefits to the Devennys for personal injuries they sustained in an automobile accident with an uninsured motorist on January 30, 1994.[1] At the time of the accident, George Devenny was employed by AC & S Corporation, a subsidiary of Irex. National Union had issued a motor vehicle insurance policy to Irex that covered Irex company cars that were supplied to its employees and subsidiaries. This policy was in effect at the time of the January, 1994 accident.

After the Devennys filed a claim for UM benefits under the National Union–Irex policy, National Union denied coverage and instituted the underlying declaratory judgment action. National Union asserted that when Irex renewed its auto insurance policy, it had specifically rejected UM coverage. This rejection, in the form of a written endorsement,

---

1. At the time of the accident Barbara Devenny was driving the car in which her husband, George, was a passenger.

was signed by Irex's Vice–President/Secretary–Treasurer, R.E. Fink and became effective April 1, 1991. Accordingly, National Union alleged that the rejection was knowing and voluntary and should preclude Irex and the Devennys from recovering UM benefits equal to the amount of the parties' policy for bodily injury liability, or, two million dollars. The court subsequently granted a motion for summary judgment in favor of the Devennys, holding that: (1) Mrs. Devenny was a permissive user of the Irex company car that had been assigned to her husband as an employee of Irex; (2) the Devennys were entitled to UM benefits because the form used by Irex to reject UM coverage was void for noncompliance with section 1731 of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL); and (3) the amount of UM benefits awarded should be equal to the National Union policy's bodily injury liability limit pursuant to section 1731(c.1) of the MVFRL. *See* 75 Pa.C.S.A. § 1731.

National Union filed a notice of appeal from the trial court's summary judgment order and now presents the following issues for our review:

(1) Whether the trial court erred in ruling that the National Union policy includes uninsured motorist coverage in Pennsylvania as a result of alleged non-compliance with the requirements of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 *et seq* ?

(2) Whether the trial court erred in granting summary judgment in favor of Appellees where there were outstanding issues of material fact relating to the named insured's knowing and voluntary election of lower uninsured motorist coverage limits?

(3) Whether the trial court erred in reforming the insurance policy to include $2 million of uninsured motorist coverage for alleged non-compliance with the requirements of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 *et seq.*, when the parties to the policy agree that the insured knowingly and voluntarily elected lower limits of uninsured motorist coverage and there was

no evidence of any prejudice to the named insured?

Our standard of review in cases of summary judgment is well settled. This court will only reverse the trial court's entry of summary judgment where there was an abuse of discretion or an error of law. *Merriweather v. Philadelphia Newspapers, Inc.*, 453 Pa.Super. 464, 470–72, 684 A.2d 137, 140 (1996). Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2; 42 Pa.C.S.A. In determining whether to grant summary judgment a trial court must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. *Id.* Summary judgment may only be granted in cases where it is clear and free from doubt the moving party is entitled to judgment as a matter of law. *Id.*

National Union's first issue concerns whether the Devennys effectuated a valid section 1731 waiver or rejection of UM benefits. National Union argues that Irex, a sophisticated company, knowingly and voluntarily rejected UM coverage when its vice president signed an endorsement that intended to waive such coverage. The insurance company asserts that the court should overlook its failure to comply with technical requirements enumerated in section 1731 of the MVFRL and find that the evidence shows that Irex clearly and unmistakably intended to reject UM coverage. In essence, National Union claims that the trial court's decision is an "improper elevation of form over substance." Not only is this argument completely devoid of merit, but it is an attempt to thwart established rules promulgated by our legislature and to throw by the wayside a strong public interest in protecting consumers of motor vehicle insurance policies. *See Johnson v. Concord Mutual Ins. Co.*, 450 Pa. 614, 622, 300 A.2d 61, 66 (1973) ("[b]ecause uninsured [UM] motorist coverage has been legislatively declared to be a matter of public policy, a deletion of coverage is not to be determined by reference to traditional rules

of waiver and estoppel.") *cited in Botsko v. Donegal Mutual Ins. Co.*, 423 Pa.Super. 41, 48, 620 A.2d 30, 33 (1993). *See also Motorists Ins. Companies v. Emig*, 444 Pa.Super. 524, 537–39, 664 A.2d 559, 566 (1995) (we must always keep in mind the critical premise that the MVFRL "is to be construed liberally in order to promote justice and to give effect to its object[ives].")). *See Donnelly v. Bauer*, 453 Pa.Super. 396, 407–09, 683 A.2d 1242, 1248 (1996), *allocatur granted*, 548 Pa. 627, 693 A.2d 967 (1997) ("rules of statutory construction require that in interpreting statutes we must at all times seek to ascertain and effectuate the legislative intent.").

The MVFRL provides that insurers must offer UM/UIM coverage equal to bodily injury liability coverage except when the insured requests in writing UM/UIM coverage in amounts less than the limits of liability for bodily injury.[2] 75 Pa.C.S.A. §§ 1731, 1734. In order to validly elect such coverage, however, it is axiomatic that the insured first be given notice by the insurer of the existence of UM/UIM coverage. Section 1791[3] of the MVFRL provides general notice of available benefits and limits contained within insurance policies, including: medical benefits, extraordinary medical benefits, income loss benefits, accidental death benefits, death benefits, **UM, UIM,** and bodily injury liability coverage. 75 Pa.C.S.A. § 1791 (emphasis added). Section 1791, however, does not provide an applicant with the ability to select, reject or reduce the benefits and types of coverages enumerated within its own section. It is presumed that an insured has been advised of the benefits and limits contained within section 1791 if a required notice, in bold print and at least ten-point type, is given to an applicant at the time he or she first applies for insurance coverage, and, pending that no other notice or rejection shall be required. 75 Pa.C.S.A. § 1791. This notice is referred to as a "conclusive presumption under section 1791."

■ Where an insurer has failed to give section 1791 notice, the insurer may still prove that the insured validly elected to waive coverage or benefits listed in section 1791 provided that the insurer fulfills the rule set forth by our supreme court in *Johnson v. Concord Mutual Ins. Co.*, 450 Pa. 614, 300 A.2d 61 (1973), and more recently restated by this court in *Tukovits v. Prudential Ins. Co. of America*, 448 Pa.Super. 540, 548–50, 672 A.2d, 786, 790 (1996). First, the insured must have been made aware of the coverage that was available. *Tukovits*, 448 Pa.Super. at 548–50, 672 A.2d at 790. Second, upon finding evidence that the insured was made aware of available coverage, a

2. The procedure to reject UM and UIM coverage is the same. *See* 75 Pa.C.S.A. § 1731(c.1). The language required to reject these two types of coverage, however, varies slightly with regard to the use of the words uninsured and underinsured. *Compare* 75 Pa.C.S.A. § 1731(b) *with* 75 Pa.C.S.A. § 1731 (c).

3. The specific section of 1791 which relates to the UM issue presented in this appeal, states, in relevant part:

§ **1791. Notice of available benefits and limits**

\* \* \*

IMPORTANT NOTICE

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:

\* \* \*

(6) Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also, at least $5,000 for damage to property of others in any one accident.

Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.

Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected.

If you have any questions or you do not understand all of the various options available to you, contact your agent or company.

If you do not understand any of the provisions contained in this notice, contact your agent or company before you sign.

75 Pa.C.S.A. § 1791(6).

court may look to events which occurred prior to and after the election in writing for further evidence that the insured acted knowingly and intelligently. *Id.* With regard to the second prong of this rule, the court may look to whether the insured previously obtained the same level of UM/UIM coverage, whether the premiums paid reflected the reduced level of UM/UIM coverage, whether the insured ever questioned the level of UM/UIM coverage, whether the insured amended or added vehicles to its policy, and whether the forms that evidenced such transactions reflect the level of UM/UIM coverage. *Id., citing Groff v. Continental Ins. Co.*, 741 F.Supp. 109, 112 (M.D.Pa. 1992).

Section 1731 of the MVFRL sets forth the availability, scope and amount of coverage specifically in the context of UM/UIM benefits. While section 1731(a) provides *specialized* notice of the availability of UM/UIM benefits/coverage and also informs an insurance applicant that he or she may purchase or reject UM/UIM coverage, section 1791 provides *general* notice of the coverages and benefits available under this Commonwealth's motor vehicle statutes. *Emig*, 444 Pa.Super. at 541–43, 664 A.2d at 568. Section 1731 states that:

> (a) **Mandatory offering.**—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.
>
> (b) **Uninsured motorist coverage.**—Uninsured motorist coverage shall provide *protection for persons who suffer injury* arising out of the maintenance or use of motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles. The named insured shall be informed that he may reject uninsured motorist coverage by signing the following written rejection form:

REJECTION OF UNINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting uninsured motorist coverage under this policy, for myself and all relatives residing in my household. Uninsured coverage protects me and relatives living in my household for losses and damages suffered if any injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages. I knowingly and voluntarily reject this coverage.

_____

Signature of First Named Insured

_____

Date

\* \* \*

> (c.1) **Form of waiver.**—Insurers shall print the rejection forms required by subsections (b) and (c) [relating to rejection of underinsured motorist protection] on separate sheets in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. **Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits.** On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists. Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.

75 Pa.C.S.A. § 1731(a), (b), & (c.1) (emphasis added).

Section 1731 requires an insurer to use exact language and adhere to very specific technical rules in order to have an insured

successfully reject UM coverage. This mandated strict compliance with section 1731 is founded upon the strong public policy favoring UM/UIM coverage. *See Tukovits, supra* (because of strong public interest involved, deletion or reduction of UM/UIM coverage is determined by stricter-than-traditional rules of waiver and estoppel).

When an insurer fails to comply, in any degree, with the statutorily required rejection/waiver rules found in section 1731, our court has found such attempted UM waiver invalid. In *Lucas v. Progressive Casualty Ins. Co.*, 451 Pa.Super. 492, 680 A.2d 873 (1996), *allocatur denied*, 548 Pa. 619, 693 A.2d 589 (1997), our court was faced with the issue of whether the insureds had executed a valid waiver of UM/UIM motorist coverage. As part of the insurance application process, the insureds in *Lucas* executed a form which indicated that they desired no UIM protection. The insureds were then given copies of the declarations pages of their policy that indicated this voluntary rejection of UIM benefits. After an auto accident, however, the insureds claimed that their UIM rejection was invalid for failure to comply with the requirements outlined in section 1731. The trial court rejected this argument and found that because the insureds signed the rejection form and because an insurance agent explained to the insureds the significance of the rejection of such coverage, "the signing [of the rejection form] was done voluntarily, knowingly and intelligently ... and the [insureds] voluntarily agreed to relinquish the UIM protection." *Lucas*, 451 Pa.Super. at 495, 680 A.2d at 875.

On appeal, a panel of this court disagreed with the trial court's determination; the court failed to uphold the "conclusive presumption of section 1791" notice, finding that the insurer, Progressive Casualty Insurance Company, had demonstrated substantial noncompliance with section 1731(c.1). In essence, the panel determined that a court must first decide whether an insurer has complied with section 1731 requirements prior to applying the conclusive presumption of section 1791. After examining the section 1731 notice afforded to the insureds, the court recognized that although the insurer used the proscribed section 1731(b) and (c) rejection language, it printed the UIM and UM rejections on the *same* sheet of paper. *Id.* at 496, 680 A.2d at 876 (emphasis in original). Section 1731 strictly requires that the rejection of UM and UIM protection be printed on *separate* sheets of paper, in prominent type and location. 75 Pa.C.S.A. § 1731(c.1) (emphasis added). Furthermore, each of these separate sheets must be signed by the first named insured and dated to be valid. *Id.* The rejection form did not specifically comply with section 1731, was determined to be void, and, therefore, entitled the insured to UM/UIM coverage equal to the bodily injury liability limits set forth in the parties' policy. *Id.*

In the present case, Irex's Vice President, Mr. Fink, signed the following "Uninsured Motorist Endorsement" prepared by National Union and made it a part of the motor vehicle policy at issue:

In consideration of the Insured [Irex] being required by statute to purchase Uninsured Motorist Coverage and/or Underinsured Motorist Coverage and not having a right to reject such coverage, the Company [Irex] agrees to provide the aforementioned Uninsured Motorist Coverage and/or Underinsured Motorist Coverage as required by statute. The total limits of liability as respects [sic] coverage provided by this endorsement, shall be the minimum limits of liability acceptable by statute in the applicable jurisdiction.

**In those jurisdictions that have no state requirements for Uninsured Motorist Coverage and/or Underinsured Motorist Coverage or allow an Insured to reject his right to such coverage, by its signature affixed hereto, the Insured evidences that no such coverage is required and that any and all such coverage as may be waived or rejected is hereby waived or rejected.**

[Emphasis added].

We must disagree with National Union's allegation that the above-quoted language is evidence of a valid waiver to reject Irex's UM coverage. The endorsement language and form substantially deviate from the required rejection language and designated rejection

procedure mandated by statute in this Commonwealth under section 1731: the endorsement is written on a *single* sheet of paper, 75 Pa.C.S.A. § 1731(c.1), the endorsement does not contain the language specified in section 1731(b), and, Mr. Fink, the first named insured, did not sign a separate sheet for rejection of UM and UIM coverage. 75 Pa.C.S.A. § 1731. Accordingly, Irex's rejection is void and its UM/UIM coverage shall be equal to the bodily injury liability limits set forth in the parties' policy – two million dollars. *Id.*

■ National Union argues, in the alternative, that even if this court finds an invalid waiver/rejection of UM coverage pursuant to section 1731, the National Union endorsement can be properly classified as Irex's effective election to reduce Irex's UM coverage limits pursuant to section 1734. Again, we must reject this absurd argument and result. *See* 1 Pa.C.S.A. § 1922 (the legislature did not intend a result that is absurd, impossible of execution or unreasonable).

Section 1734 provides:

**Request for lower limits of coverage**

A named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury.

75 Pa.C.S.A. § 1734.

In a case involving language almost identical to that found in the National Union endorsement, our court determined that an insurer did not establish either a valid rejection or reduction of UIM benefits so as to deny the insured the statutory right to UIM coverage equal to the amount of the policy's bodily injury liability limit. In *Insurance Co. of State of Pa. v. Miller*, 426

Pa.Super. 519, 627 A.2d 797 (1993), our court observed that the insurance company failed to include within the insured's policy the precise language required for sufficient notice under either section 1791 or section 1731 of the MVFRL.[4] In *Miller*, the parties' automobile policy contained the following endorsement, signed by the insured:

> In those states where by statute the Insured is required to purchase Uninsured Motorist Coverage, Underinsured Motorist Coverage or Personal Injury Protection Coverage and does not have the right to reject such coverage, the Company agrees to provide the coverage on the form currently approved for use in the applicable jurisdiction. The limits of liability as respects this endorsement shall be the minimum limits of liability acceptable by statute in the applicable jurisdiction.
>
> In those jurisdictions that allow an Insured to reject his right to Uninsured Motorist Coverage, Underinsured Motorist Coverage or Personal Injury Protection coverage, by its signature affixed hereto, the Insured evidences its intent to so reject.

*Miller*, at 525, 627 A.2d at 799–800. The insurance company argued that the insured's signature affixed to the above-quoted endorsement, coupled with testimony provided by its self-serving insurance witnesses, constituted a valid election of lower UIM coverage. *Id.* at 525–27, 627 A.2d at 800. Disagreeing with the insurance company, our court found that the endorsement language not only failed to contain the statutorily-mandated language to effectively reduce the insured's UIM coverage, but also determined that there was no evidence that the insured was given the requisite notice of available benefits and coverages enumerated in 1791. Furthermore, the insured's mere signature

---

4. Interestingly, the *Miller* court finds that "[t]he insurance policy did not include either the notice required by § 1791 or the form for rejection or **reduction** of uninsured or underinsured motorist benefits set forth in § 1731." *Miller*, 426 Pa.Super. at 524, 627 A.2d at 799 (emphasis added). The decision further recognizes that section 1734 of the MVFRL provides an insured the vehicle for requesting UM/UIM coverage in an amount less than that required by statute and which is made available in section 1731. *Id.* at 523, 627 A.2d at 798. Except for a sweeping reference to section 1734 in footnote 2 of the opinion, the court never again mentions this section and how it affects its ultimate decision. We interpret this lack of reference to section 1734 as intentional because the court believed that one cannot validly elect to lower the limits of UM/UIM coverage pursuant to section 1734 without first being given the requisite notice of the availability of such coverage found within section 1731. It is this rationale upon which we base our decision today.

on the bottom of the inadequate endorsement did not constitute sufficient waiver. *Id.*

Applying the rationale set forth in *Miller*, Mr. Fink's signature on the bottom of the National Union endorsement does not constitute sufficient evidence of a waiver. *Miller*, 426 Pa.Super. at 525–27, 627 A.2d at 800. Moreover, we cannot convert an invalid section 1731 waiver form into a valid section 1734 election of lower UM coverage limits. To do so would not only disregard our court's instruction that we are to read sections 1731 and 1734 *in pari materia*, but such a finding would also prevent us from complying with the stricter-than-traditional rules of waiver afforded to purchasers of insurance. *Emig*, 444 Pa.Super. at 539 n. 4, 664 A.2d at 567 n. 4 (court rejected appellant's argument that appellee's signature on the bottom of policy change request form constitutes a written request for reduced UM/UIM coverages as contemplated by section 1734).

In *Motorists Ins. Companies v. Emig, supra,* our court examined the interplay between sections 1734 and 1791 of the MVFRL. The insured in *Emig* requested that her automobile policy, issued by Motorists Ins. Cos. (Motorists), include bodily injury liability coverage of $50,000.00 per person or $100,000.00 per occurrence ("50/100") and reduced UM/UIM coverages in the amount of $15,000.00 per person or $30,000.00 per accident ("15/30"). The insured executed and signed a "waiver/acknowledgement" form stipulating that she was advised of her right to receive UM/UIM coverage in the amount of her bodily injury liability limit. When the insured was subsequently involved in an automobile accident, she was advised by counsel to raise her lowered 15/30 UM/UIM limits; she complied and raised the limits to 50/100.

Upon renewal of her auto policy, the insured received a declarations page that reflected these increased UM/UIM coverage limits, which now, incidentally, equaled her bodily injury liability limits. When the insured later met with a Motorist's agent to execute a casualty policy change request form, the insured rejected the stacking of

UM/UIM benefits by signing a separate waiver form. *See* 75 Pa.C.S.A. § 1738 (stacking of UM/UIM benefits and option to waive). After becoming involved in a second automobile accident, the insured sought UIM benefits under her Motorist's policy in the amount of $50,000.00. Motorists disputed the amount of UIM coverage, claiming that the insured was only entitled to a $15,000.00 limit. The trial court agreed with the insured's interpretation of the insurance policy and awarded the claimant $50,000.00 in UIM benefits.

On appeal our court affirmed the trial court, with rationale very similar to that espoused in *Lucas*. The court found that where the insurer had failed to comply with section 1734 of the MVFRL, a section dealing with requests for lower UM/UIM coverage limits, the "conclusive presumption" of 1791 could not be applied to find that the insured was fully aware of her reduction in coverage. The *Emig* court explained that while section 1731 sets forth both the language and procedure to be used in a form for a valid rejection of UM/UIM coverage, "[n]o similar forms or procedure for *reduction* of UM/UIM coverages . . . are provided [in section 1734 of the MVFRL]." *Emig*, 444 Pa.Super. at 531, 664 A.2d at 563 (emphasis in original). The court established that in order for an applicant to validly select lower coverage limits for UM/UIM benefits, the applicant/insured must request such reduced benefits in writing; in the absence of such a written request, no knowing and understanding election of lower limits would be conclusively presumed. *Id.* at 543–45, 664 A.2d at 569. In *Emig*, the insured merely signed the bottom of a policy change request form, a form which did not contain any specific language that clearly evidenced the intent to *reduce or effectuate a reduction* in the insured's UM/UIM limits. Furthermore, the insured neither signed nor voluntarily checked the boxes next to the selection to lower the limits of such coverage on another section of the policy change form entitled "UM/UIM REJECTION OR REDUCTION."[5]

---

**5.** In *Emig*, the insurer provided the following "reduction of UM/UIM coverage form" for the insured to sign:

Just as in *Emig*, the endorsement signed by Mr. Fink in this case does not demonstrate Irex's intent to reduce UM coverage in Pennsylvania. The first paragraph of the endorsement merely recites that National Union shall provide Irex "the minimum limits of [UM] liability acceptable by statute in the applicable jurisdiction"; the language does not apply to a *reduction* in the amount of coverage available by statute but, rather, sets a minimum cap on the limit of available coverage. *Emig, supra.*

Even if we were to interpret the National Union endorsement as an attempt to reduce UM coverage, the language found in the endorsement's second paragraph provides that in a jurisdiction that does not require UM/UIM coverage, any and all coverage is waived or rejected. Because Pennsylvania does not statutorily require an insured to carry UM/UIM coverage, this endorsement, at best, evidences Irex's intent to **reject/waive UM coverage, not lower its UM limits to the statutory minimum acceptable by statute.** National Union's alternative argument, therefore, must fail as it attempts to circumvent the intent behind this state's MVFRL—statutory requirements that have been carefully drafted by our legislature.[6]

■ We conclude that an insured cannot make a valid election to reduce UM/UIM statutory coverage limits under section 1734 unless and until the insured/applicant comports with the requirements set forth in section 1731. Section 1731, like section 1791, provides notice of the availability of UM/UIM coverage, informing the applicant that he or she may effectively waive this coverage – either completely rejecting such coverage or setting a limit other than the statutory mandate. *See Emig*, 444 Pa.Super. at 527, 664 A.2d at 561 (section 1791 of the MVFRL requires an insurer to furnish policy applicants with notice of the types and amounts of coverage required to be offered; "this notice must also inform the applicant that he/she may purchase or reject these coverages [and] ... that he or she may purchase coverages in higher or lower amounts than those set forth in the 'Important Notice' [section of 1791].").

Specifically, section 1731 apprises an individual of the Commonwealth's policy to offer all applicants UM/UIM coverage, explains the purpose of such protection, and informs the applicant of his/her right to reject or accept coverage in amounts provided in section 1734. The purpose served by section 1731 can only be fully realized if applicants are first given 1731 notice of the available UM/UIM coverage before attempting to request coverage in an amount less than that mandated by statute. *See Tukovits*, 448 Pa.Super. at 546–50, 672 A.2d at 789–90 ("in order for the writing to evidence 'an express agreement or acquiescence on the part of the insured' to elect an amount of UM/UIM coverage less than the statutory mandate, **the insured must have been made aware of the coverage that was available.**"). To construe these sections of the MVFRL in any other way places the cart before the horse – namely, it would allow an applicant to elect a lower amount of coverage before being apprised of either the fact that the specific type of coverage is even available or that there is a standard statutory amount from which an applicant may elect to deviate in a downward fashion. Such a result certainly was not

**UM/UIM REJECTION OR REDUCTION** If an option listed below is *requested, the correct block must be checked and the insured must sign in the space provided.*

\* \* \*

**PA** [Blank Box] I request an Uninsured Motorists [sic] coverage limit of $——/$—— to be effective in my policy.

[Blank Box] I request an Underinsured Motorists [sic] coverage limit of $——/$—— to be effective in my policy.

I understand that the limit(s) requested are lower than the Bodily Injury Liability limit afforded by this policy.

\* \* \*

Applicant's Signature – UM/UIM Rejection

X————————————

*Emig*, 444 Pa.Super. at 533–35, 664 A.2d at 564.

6. Similarly, to accept National Union's argument that the Devennys are only entitled to $15,000.00 of UM benefits under the Irex–National Union policy would effectuate an injustice and an inequity – in sum, a payout that is substantially less ($1,985,000.00 less, to be exact) than that which the Devennys would receive if the policy's UM coverages were at least equal to the policy's bodily injury liability limit of $2,000,000.00.

intended by the legislature. *See Emig*, 444 Pa.Super. at 539–41, 664 A.2d at 567 ("[w]ere we to conclude that Section 1791 subsumes or superceded Section 1734, we would be rendering an interpretation that is absurd and unreasonable"; each statute enacted is to be definite and certain).

Construing sections 1731, 1734, and 1791 *in pari materia*, we arrive at the following conclusions. First, one must be given the general notice of benefits and coverages, including UM/UIM coverage, found within section 1791; only then can the insured render a knowing and intelligent election to accept or reject such coverage. In order to effectively accept or reject UIM or UM coverage, an insured must be given sufficient notice provided in section 1731. This notice requires an insurer to strictly comply with designated statutory language and technical and procedural rules annunciated in 1731. Only when the insurer has complied with the requirements of section 1731 will we apply the conclusive presumption of 1791. *Lucas, supra.*

Second, in order to validly elect lower UM or UIM coverage limits under section 1734, one must first validly elect such coverage by being given notice of the availability, scope and amount of coverage for UIM/UM benefits – again, this notice is specifically provided in section 1731. Thus, in order to effectuate a knowing and intelligent waiver of statutory UM/UIM benefits equal to the bodily injury liability limit of the relevant insurance policy, one must first comply with section 1731. If a valid acceptance is rendered, the insured may then make a knowing and intelligent decision to reduce the amount of available UM/UIM coverage under section 1734. As our court held in *Lucas* and *Emig*, in order to conclusively presume waiver under section 1791, an insurer must strictly comply with sections 1731 and 1734. Logic dictates, then, that in order to reduce coverage, one must have first elected to accept such coverage and been informed of the availability of such coverage and the right to reject or reduce the coverage limit.

A fair reading of *Botsko v. Donegal Mutual Ins. Co.*, 423 Pa.Super. 41, 620 A.2d 30 (1993), supports our functional interpretation of sections 1731, 1734, and 1791. In *Botsko*, our court determined that where an insured had not been made aware of the mandatory amount of available UM/UIM motorist coverage as dictated by 75 Pa.C.S.A. § 1791, the insured was unable to validly elect to waive such coverage in favor of lower coverage limits. In *Botsko*, the insured argued that his insurer had improperly limited his UIM coverage without first obtaining a valid MVFRL waiver of his rights to obtain UM/UIM coverage in the amount of bodily injury liability coverage listed in the parties' insurance policy. In making its determination, the court looked specifically to the language of sections 1731, 1734 and 1791 of the MVFRL.

The evidence showed that the insured in *Botsko* had purchased and received a copy of an automobile insurance policy which had previously been issued to his father. He later signed the policy and requested the same bodily injury liability and UM/UIM coverage limits as that included within his father's original policy. These limits were in the amount of $300,000.00 and $35,000.00, respectively. When the insurer, Donegal Ins. Co. (Donegal), issued the policy to the insured it contained the limits set in his father's policy. The insured paid the premiums annually and renewed the policy every year until he was involved in a head-on collision where the vehicle he was operating was struck by an underinsured motorist. After settling his bodily injury claim, the insured commenced a declaratory judgment action against Donegal seeking UIM coverage in the amount of $300,000.00 (his bodily injury liability limit under the parties' policy).

In finding that the insured could not have validly elected to waive UIM coverage in the amount of his bodily injury liability limit, the *Botsko* court focused on the fact that Donegal never provided the insured notice of the available benefits and coverages included within section 1791 of the MVFRL. Even though the insured continually paid his policy premium and renewed his policy annually without questioning or requesting a change in the proscribed UM/UIM limits set forth in the policy, the court remained steadfast that

no effective waiver had occurred. The court announced the principle that the amount of UM/UIM coverage is statutorily mandated and can only be waived in favor of lesser coverage if the insured has first been made aware of the coverage that is available. *Botsko, supra,* 423 Pa.Super. at 47–49, 620 A.2d at 33. At the heart of the court's decision was the fact that "[w]ithout such information [of section 1791 notice], a knowing and intelligent waiver cannot be made." *Id.*

█ In the present case, not only is there a lack of evidence of whether Irex was made aware of the available coverage under section 1791, but National Union admits that it never provided Irex with section 1791 notice. We acknowledge the fact that an Irex representative signed an endorsement purportedly limiting its UM limits and that Irex renewed the National Union policy with the above-stated limits; such facts are relevant and tend to raise an inference that Irex knowingly reduced its UM/UIM coverage. *Tukovits, supra.* In the absence of a valid 1731 waiver and 1791 notice, however, Irex is unable to show that it knowingly and intelligently waived UM/UIM coverage mandated by statute. *Botsko, supra.* Furthermore, under the circumstances we find that National Union cannot prove that Irex knowingly and intelligently chose to elect lower UM coverage limits. Without an effective section 1731 waiver specifically rejecting the statutory limits of UM/UIM coverage, one may not apply the conclusive presumption of section 1791 notice. *Lucas, supra.* Therefore, even if National Union had supplied Irex with the requisite section 1791 notice, our decision would remain—no valid waiver or reduction of UM benefits occurred. *Lucas, supra; Emig, supra.*

Akin to previous decisions of our court that refuse to find a conclusive presumption of waiver under section 1791 where an insured has not first met the statutory requirements outlined in sections 1731 or 1734, we cannot find that an applicant has made a knowing and intelligent waiver of the mandated statutory minimum of UM coverage in place of lower limits under section 1734 without first finding that the insured provided the applicant with the information contained within section 1731. Armed with the information contained in section 1731, an applicant will understand the option to purchase UM/UIM coverage at the amount of bodily injury liability coverage provided in his or her policy, the right ·to reject such coverage in this Commonwealth and, if he or she chooses UM/UIM coverage, the ability to reduce the limits of such coverage to less than that of his or her policy's bodily injury liability limit. To follow this procedure will prevent an insured, like the appellee in *Botsko,* from claiming that he was unaware that increased UM coverage was available to him under his policy. *See Botsko,* 423 Pa.Super. at 49–51, 620 A.2d at 34. *See also Tukovits, supra* (court was precluded from finding that insured had waived higher UM/UIM limits as a matter of law where there was no evidence showing that insured ever read his automobile policy, ever had it explained to him, or ever realized the magnitude of marking and signing an elective renewal policy).

We echo the words stated by the *Botsko* court, which we find equally applicable to our interpretation of the interplay of sections 1731 and 1734:

> Without such information [contained within section 1731], a knowing and intelligent waiver [for lower coverage under section 1734] cannot be made. Here, there was no evidence that the insured was ever made aware of the coverage available to him. In the absence thereof, he could not knowingly and intelligently waive the coverage mandated by statute.

*Id.* at 48, 620 A.2d at 33. *Accord Tukovits,* 448 Pa.Super. at 548–50, 672 A.2d at 790.

National concedes that it did not provide Irex the notice required under section 1791. We conclude, therefore, that because National Union had Irex sign a clearly inadequate section 1731 waiver form of UM coverage, Irex failed to waive the mandatory UM/UIM coverage. *Lucas, supra.* Because the MVFRL dictates that such a waiver is invalid, the insured is entitled to the coverage provided under its policy for bodily injury liability (two million· dollars). 75 Pa.C.S.A. § 1731(c.1). Such a finding comports with the proposition that we must read sections 1734 (request for lower limits of coverage)

and 1731 (availability, scope and amount of UM/UIM coverage) and section 1791 of the MVFRL *in pari materia* and must construe these sections together, if possible. *Emig, supra. See also Donnelly,* 453 Pa.Super. at 408, 683 A.2d at 1248 ("[T]he legislature is presumed to have had no intention of adopting conflicting provisions in the same statute.").

Accordingly, having found that there was no valid section 1731 waiver of UM coverage, that there was no valid section 1734 election of reduced UM coverage, and that there could be no conclusive presumption of section 1791 notice where no section 1791 notice was ever provided, the Devennys are entitled to judgment as a matter of law. Pa.R.C.P. 1035.2; 42 Pa.C.S.A.; *Merriweather, supra.*

Order affirmed.

SCHILLER, J., files a dissenting opinion.

SCHILLER, Judge, dissenting:

Because I believe the majority embarks on a path that contravenes prior case law, violates jurisprudential principles, impedes public policy, and will ultimately cost all individual policy holders higher premiums, I respectfully dissent from that portion of the majority opinion which expands appellant's exposure beyond the statutory minimum.

First, the conclusion that once the statutorily required notice under § 1731 is not provided, an insured may not thereafter validly select a lower level of uninsured motorist coverage pursuant to § 1734, contradicts this Court's decision in *Insurance Co. of State of Pa. v. Miller,* 426 Pa.Super. 519, 627 A.2d 797 (1993). In *Miller,* this Court concluded that the insurance company did not provide the requisite notice under § 1731. *Id.* at 523–25, 627 A.2d at 799. The Court then addressed the insurer's argument that an endorsement signed by the insured constituted a valid election under § 1734, and concluded that **based on the facts produced at the bench trial,** the insurer did not show that the insured made a knowing election under § 1734. *Id.* at 525–27, 627 A.2d at 800. Obviously, if the *Miller* Court believed that § 1731 notice was a prerequisite to a § 1734 election, it would not have needed to examine the evidence produced at trial concerning the § 1734 election. Thus an insurer's failure to provide § 1731 notice does not *ipso facto* preclude an insured from making a valid election under § 1734 pursuant to the test set forth in *Tukovits v. Prudential Ins. Co. of America,* 448 Pa.Super. 540, 672 A.2d 786, *alloc. denied,* 546 Pa. 668, 685 A.2d 547 (1996).

Second, the idea that Irex knowingly and validly elected lower coverage is buttressed by Irex' answer to National Union's complaint, wherein Irex averred, "Irex Corporation admits that it **fully understood** that it was continually declining Pennsylvania Uninsured Motorist coverage for the vehicles covered by the policy of commercial insurance with National Union Fire Insurance Company for the policy year 1991–92 and forward, and **it did this knowingly.**" Irex Corporation's Answer to Declaratory Judgment Action, at 14 (emphasis added). Such a statement clearly constitutes a judicial admission, a fact which is ignored by the majority. "A judicial admission is an express waiver made in court or preparatory to trial by a party or the party's counsel, conceding for the purpose of trial, the truth of the admission." *General Equipment v. Westfield Ins.,* 430 Pa.Super. 526, 541, 635 A.2d 173, 181 (1993), *alloc. denied,* 537 Pa. 663, 644 A.2d 1200 (1994). The law of Pennsylvania has long recognized the conclusiveness of judicial admissions as establishing the admitted fact as true: as the Pennsylvania Supreme Court stated almost 150 years ago, "the concessions of attorneys of record [in pleadings] bind their clients in all matters relating to the trial and progress of their cause." *Truby v. Seybert,* 12 Pa. 101, 104 (1849). Judicial admissions in the pleadings are welcomed by courts, as they are "a device by which a trial may be expedited through the elimination of the need for proof of certain facts which are not disputed." *Durkin v. Equine Clinics, Inc.,* 376 Pa.Super. 557, 565–67, 546 A.2d 665, 669 (1988), *alloc. denied,* 524 Pa. 608, 569 A.2d 1367 (1989). Consequently, Irex's judicial admission that it knowingly was declining uninsured motorists coverage should preclude any attempt to evade that fact by the third party beneficiary. Additionally, the

purchaser of the insurance in this case was a multi-state corporation insuring a large fleet of automobiles, and incurring several thousand dollars each year in premiums; its choice of the lowest available premiums was consistent with a business decision to minimize business costs.

Third, the majority's opinion has the effect of rewriting an insurance contract where both the seller and the purchaser of the policy agree **on the record** as to what coverages were selected. Here, unlike other cases raising similar issues, the party contesting the amount of uninsured coverage available is NOT the insured.[1] *See e.g. Botsko v. Donegal Mut. Ins. Co.*, 423 Pa.Super. 41, 620 A.2d 30, *alloc. denied*, 536 Pa. 624, 637 A.2d 284 (1993). I am unaware of any authority which allows a third party such as the Devennys to change the terms of a contract agreed upon by the contracting parties, especially where the change is detrimental to both contracting parties.[2] As the Pennsylvania Supreme Court explained:

> An injured person who makes a claim for uninsured motorist benefits under a policy to which he is not a signatory is in the category of a third party beneficiary. Historically, this Court has held that third party beneficiaries are bound by the same limitations in the contract as the signatories of that contract. The third party beneficiary cannot recover except under the terms and conditions of the contract from which he makes a claim. *Grim v. Thomas Iron Co.*, 115 Pa. 611, 8 A. 595 (1887). "[T]he rights of an alleged third party beneficiary may arise [sic] no higher than the rights of the parties to the contract and ... they are vulnerable to the same limitations which may be asserted between the promisor and the promisee." *Jewelcor Jewelers & Distributors, Inc. v. Corr*, 373 Pa.Super. 536, 553, 542 A.2d 72, 80 (1988), *appeal denied, sub nom., Granjewel Jewelers & Distributors, Inc. v. Corr*, 524 Pa. 608, 569 A.2d 1367 (1989), *citing Williams v. Paxson Coal Co.*, 346 Pa. 468, 31 A.2d 69 (1943).

*Johnson v. Pennsylvania National Ins.*, 527 Pa. 504, 508, 594 A.2d 296, 298–99 (1991).

Finally, and perhaps most troubling, the majority's holding that even the most sophisticated insured cannot elect a lower amount of uninsured motorist coverage under § 1734 if the insurer does not provide the notice required under § 1731 will have the effect of increasing automobile insurance rates for all drivers in the Commonwealth, a result that violates the public policy behind the Motor Vehicle Financial Responsibility Law. As the Pennsylvania Supreme Court recently reiterated, "the repeal of the No–Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101, and the simultaneous enactment of the MVFRL, reflected a legislative concern for the spiraling consumer cost of automobile insurance and the resultant increase in the number of uninsured motorists driving on public highways. This legislative concern over the increasing costs of automobile insurance is the public policy which is to be advanced when interpreting the statutory provisions of the MVRFL." *Rump v. Aetna Casualty and Surety Co.*, —— Pa. ——, 710 A.2d 1093 (1998). *Accord Caron v. Reliance Ins. Co.*, 703 A.2d 63, 69 (Pa.Super.1997). Today's decision negates a party's explicit desire to pay reduced insurance premiums in exchange for reduced coverage. This contravenes the established and laudatory public policy of lowering rates, and will ultimately raise the cost of insurance for all Pennsylvanians by forcing insurance companies to include in their premiums costs for potential future losses resulting from expanded exposure which was not selected and consequently not paid for by the purchaser of the insurance policy.

---

1. Implied in the majority's opinion is the notion that Irex joined with the Devennys in seeking $2,000,000 in uninsured motorist coverage. However, Irex did not contest National Union's declaratory judgment action in the trial court, and Irex has not pursued this matter on appeal.

2. The majority's conclusion that the policy provides $2,000,000 in uninsured motorist coverage not only holds National Union to a potentially higher liability, but obviously subjects Irex to a significantly larger insurance bill than what it agreed to when it selected the terms of its policy.