**Robert A. LEWIS, Linda S. Lewis, Husband and Wife and Robert J. Lewis, Appellees,**

v.

**ERIE INSURANCE EXCHANGE, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 22, 1999.

Filed May 30, 2000.

---

Craig R.F. Murphey, Erie, for appellant.

Cynthia M. Daniel, Pittsburgh, for appellees.

Before EAKIN, LALLY–GREEN, and BROSKY, JJ.

LALLY–GREEN, J.:

¶ 1 Appellant, Erie Insurance Exchange ("Erie"), appeals from the Order entered in the Court of Common Pleas of Clarion County granting judgment on the pleadings in favor of Appellees Robert A. Lewis, Linda S. Lewis, and Robert J. Lewis. We reverse and remand for further proceedings.

## I.

¶ 2 The pertinent facts underlying this case are as follows. On November 23, 1992, Erie issued Robert A. Lewis an automobile liability insurance policy, policy no. Q06–0502942–N ("Policy"). In his initial application, Robert A. Lewis requested and received bodily injury liability coverage of $500,000 per person and $500,000 per accident. Also, as part of his initial application, Appellee requested and re-

ceived reduced uninsured/underinsured ("UM/UIM") coverages in the amount of $50,000 per person and $100,000 per accident. (Reduced coverage is permitted by § 1734 of the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 *et seq.* ("MVFRL")).[1] The stacking option also applied to the Policy.

¶3 As of July 21, 1997, the Policy was still in full force and effect and provided for the same coverages and premiums as was provided in the initial Policy dated November 23, 1992. It was on this date (July 21, 1997), that Robert A. Lewis's son, Robert J. Lewis, was injured in an automobile accident while riding as a guest passenger in a vehicle insured by another insurance company. As a "resident relative" of Robert A. Lewis, Robert J. Lewis was an "insured" under the Policy. A dispute arose between Appellees and Erie over the amount of underinsured motorist coverage available to Robert J. Lewis.

¶4 On April 24, 1998, Appellees filed an action for Declaratory Judgment. Appellees asserted that an election of reduced UM and UIM coverage limits is valid under § 1734 only when the election meets the technical requirements of 75 Pa.C.S.A. § 1731.[2] One of § 1731's technical requirements is that an insurer must provide the waivers of UM and UIM coverages on separate pages. *See* 75 Pa.C.S.A. § 1731(c.1). Further, § 1731 provides that a failure to comply with the § 1731 requirements causes the rejection form to be void and, therefore, the UM and UIM coverage is equal to the bodily liability limits. On the other hand, § 1734 states that a request for reduction of UM or UIM coverages must be made in writing. None of the technical requirements of § 1731 is explicitly set out in § 1734.

¶5 Appellees argued that this § 1731 separate-page requirement should also apply to requests for reduced coverages under § 1734. Since Robert A. Lewis signed an Erie form which contained the requests for reduced UM and UIM coverages on the same page and not separate pages, Appellees argued that the requirements of § 1734 were not met. Consequently, they concluded, the Policy was void and unenforceable. Appellees asked the trial court to reform the insurance contract to provide UM/UIM coverages equal to the amount of bodily injury liability coverage, with the stacking option applicable.

¶6 Erie filed a motion for summary judgment,[3] arguing that § 1731(c.1) does not apply where the issue is the reduction of UM/UIM coverages and not the complete rejection of such coverages. Docket Entry 5. Erie argued alternatively that even if § 1734 required strict technical compliance with the mandates of § 1731, § 1734 does not provide a statutory remedy and the courts are not permitted to imply one. *Id.*

¶7 The trial court treated Erie's motion for summary judgment as a motion for judgment on the pleadings.[4] The court granted judgment on the pleadings in favor of Appellees, holding that the selection by Robert A. Lewis of reduced UM/UIM coverages was void and unenforceable because the reduction/waiver forms provided by Erie violated the technical mandates of § 1731. Trial Court Opinion at 3–4. Furthermore, the court ordered reformation of the Policy to provide UM/UIM coverage equal to the Policy's bodily injury liability coverage, with the stacking option applicable. *Id.* at 4.

¶8 Erie asserts the following questions for our review:

1. The text of 75 Pa.C.S.A. § 1734 is set out on page 843, *infra.*

2. The text of 75 Pa.C.S.A. § 1731 is set out on pages 843–44, *infra.*

3. Prior to this, Erie had filed an Answer and New Matter, and Appellees had filed a Reply thereto. (Docket Entries 3 and 4).

4. The record does not reflect that the trial court addressed Appellees' request for Declaratory Judgment.

(1) Whether the subject automobile insurance policy properly provides UM/UIM coverage limits of $50,000 per person/$100,000 per accident when the named insured, plaintiff Robert A. Lewis, made a written request for coverage in those amounts, which request complies with the requirements of 75 Pa. C.S.A. § 1734?

(2) Even if the insurer must comply with § 1731 in addition to § 1734 before providing UM/UIM coverage limits less than the bodily injury liability limits of the policy, does the MVFRL provide a remedy requiring reformation of the policy to provide more coverage than was purchased?

## II.

### A.

■ ¶ 9 Our standard and scope of review in matters involving the grant or denial of judgment on the pleadings is as follows:

[Appellate review of an order granting a motion for judgment on the pleadings] is plenary. The appellate court will apply the same standard employed by the trial court. A trial court must confine its consideration to the pleadings and relevant documents. The court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted. Further, the court may grant judgment on the pleadings only where the moving party's right to succeed is certain and the case is so free from doubt that trial would clearly be a fruitless exercise.

*Kafando v. State Farm Mut. Auto. Ins. Co.*, 704 A.2d 675, 676 (Pa.Super.1998), *appeal denied*, 557 Pa. 629, 732 A.2d 615 (1998), quoting *Steiner v. Bell of Pennsylvania*, 426 Pa.Super. 84, 87–89, 626 A.2d 584, 586 (1993). The reviewing court is to determine if the trial court's action respecting the motion for judgment on the pleadings "was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury." *Kelly v. Nationwide Ins. Co.*, 414 Pa.Super. 6, 8–10, 606 A.2d 470, 471 (1992) (citation omitted). Since there are no factual issues disclosed by the pleadings that should properly go to the jury, our review is to determine whether the trial court committed a clear error of law.

### B.

¶ 10 The MVFRL mandates that an insurer, who issues motor vehicle liability policies, offer its customers UM/UIM coverages in amounts equal to the amount of the bodily injury liability limits of the customers' policies. *See* 75 Pa.C.S.A. § 1791(6). In order for an insured to obtain UM/UIM coverages that are lower than the policy's bodily injury liability coverage, the insured must specifically request such levels in accordance with either § 1734 (for reduction), or § 1731 (for complete rejection). 75 Pa.C.S.A. §§ 1734, 1731. In order to address Erie's issues, we must interpret the purpose and meaning of § 1734 and its relationship to § 1731.

■ ¶ 11 The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S.A. § 1921(b); *Pennsylvania Fin. Responsibility Assigned Claims Plan v. English*, 541 Pa. 424, 430, 664 A.2d 84, 87 (1995). "The basic tenet of statutory construction requires a court to construe the words of the statute according to their plain meaning." *Grom v. Burgoon*, 448 Pa.Super. 616, 619–620, 672 A.2d 823, 825 (1996), citing 1 Pa.C.S.A. § 1903(a). "When the words of a statute are clear and unambiguous, this Court cannot disregard them under the pretext of pursuing the spirit of the statute." *Grom*, 672 A.2d at 825. Where, however, the statute is unclear or

ambiguous, the intent of the legislature is ascertained by reviewing the following: the necessity of the law; the object to be attained by the law; the circumstances under which the law was enacted; and the mischief to be remedied by the law. *English*, 541 Pa. at 430, 664 A.2d at 87. "Our duty to interpret statutes does not include the right to add provisions that the legislature has omitted." *Grom*, 672 A.2d at 825.

## C.

Sections 1734 and 1731 are set out below. Section 1734 provides:

**Request for lower limits of coverage**

A named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury.

75 Pa.C.S.A. § 1734. Section 1731 provides, in pertinent part:

**Availability, scope and amount of coverage**

**(a) Mandatory offering.**—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in Section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.

**(b) Uninsured motorist coverage.**—Uninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles. The named insured shall be informed that he may reject uninsured motorist coverage by signing the following written rejection form:

REJECTION OF UNINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting uninsured motorist coverage under this policy, for myself and all relatives residing in my household. Uninsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages. I knowingly and voluntarily reject this coverage.

_____

Signature of First Named Insured

_____

Date

**(c) Underinsured motorist coverage.**—Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles. The named insured shall be informed that he may reject underinsured motorist coverage by signing the following written rejection form:

REJECTION OF UNDERINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

_____

Signature of First Named Insured

_____

Date

**(c.1) Form of waiver.**—Insurers shall print the rejection forms required by subsections (b) and (c) **on separate sheets** in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. **Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits.** On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists. **Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.**

75 Pa.C.S.A. § 1731(a), (b) and (c.1) (emphasis added).

¶ 12 Sections 1791 and 1791.1, 75 Pa. C.S.A. §§ 1791 and 1791.1, are often referred to when a court addresses either § 1734 or § 1731. Neither § 1791 nor § 1791.1 is at issue in this case. However, in order to properly understand the relevant case law discussed below, we set out § 1791 and § 1791.1 here.

¶ 13 Section 1791 contains a presumption that the "insured has been advised of the benefits and limits available" under the MVFRL if the insurer complies with the § 1791 requirements respecting statutory language and format.[5] Section 1791.1 im-

---

5. Section 1791 provides:
§ **1791. Notice of available benefits and limits**
It shall be presumed that the insured has been advised of the benefits and limits available under this chapter provided the following notice in bold print of at least ten-point type is given to the applicant at the time of application for original coverage, and no other notice or rejection shall be required:
IMPORTANT NOTICE
Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:
(1) Medical benefits, up to at least $100,-000.
(1.1) Extraordinary medical benefits, from $100,000 to $1,100,000 which may be offered in increments of $100,000.
(2) Income loss benefits, up to at least $2,500 per month up to a maximum benefit of at least $50,000.
(3) Accidental death benefits, up to at least $25,000.
(4) Funeral benefits, $2,500.
(5) As an alternative to paragraphs (1), (2), (3) and (4), a combination benefit, up to at least $177,500 of benefits in the aggregate or benefits payable up to three years from the date of the accident, whichever occurs first, subject to a limit on accidental death benefit of up to $25,000 and a limit on funeral benefit of $2,500, provided that nothing contained in this subsection shall be construed to limit, reduce, modify or change the provisions of section 1715(d) (relating to availability of adequate limits).
(6) Uninsured, underinsured and bodily injury liabilitycoverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also, at least $5,000 for damage to property of others in any one accident.
Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.
Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected.

poses on the insurer a requirement to provide to the insured an itemized invoice listing the minimum motor vehicle insurance coverage levels, notice respecting alternative tort options, notice concerning discounts, and additional requested information concerning the cost of insurance. 75 Pa.C.S.A. § 1791.1(a)–(d). Said invoice and notice of tort options are to be given in

> If you have any questions or you do not understand all of the various options available to you, contact your agent or company.
> If you do not understand any of the provisions contained in this notice, contact your agent or company before you sign.

75 Pa.C.S.A. § 1791.

6. Section 1791.1 provides, in pertinent part:

**§ 1791.1 Disclosure of premium charges and tort options**

(a) **Invoice.**—At the time of application for original coverage and every renewal thereafter, an insurer must provide to an insured an itemized invoice listing the minimum motor vehicle insurance coverage levels mandated by the Commonwealth and the premium charge for the insured to purchase the minimum mandated coverages. The invoice must contain the following notice in print of no less than ten-point type:

> The laws of the Commonwealth of Pennsylvania, as enacted by the General Assembly, only require that you purchase liability and first-party medical benefit coverages. Any additional coverages or coverages in excess of the limits required by law are provided only at your request as enhancements to basic coverages.

The insurer shall provide the itemized invoice to the insured in conjunction with the declaration of coverage limits and premiums for the insured's existing coverages.

(b) **Notice of tort options.**—In addition to the invoice required under subsection (a), an insurer must, at the time of application for original coverage for private passenger motor vehicle insurance and every renewal thereafter, provide to an insured the following notice of the availability of two alternatives of full tort insurance and limited tort insurance described in section 1705(c) and (d) (relating to election of tort options):

> The laws of the Commonwealth of Pennsylvania give you the right to choose either of the following two tort options:
> **A. "Limited Tort" Option**—This form of insurance limits your right and the rights of members of your household to seek financial compensation for injuries caused by other drivers. Under this form

accordance with statutory language and format. 75 Pa.C.S.A. § 1791.1(a)–(b).[6] Since the courts read §§ 1791 and 1791.1 *in pari materia* with the other sections of the MVFRL, "the conclusive presumption of § 1791 is not triggered unless and until the statutory mandate of [the applicable waiver provision] has first been fulfilled." *Lucas v. Progressive Cas. Ins. Co.*, 451

> of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury," as set forth in the policy, or unless one of several other exceptions noted in the policy applies.
> **B. "Full Tort" Option**—This form of insurance allows you to maintain an unrestricted right for yourself and other members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering or other nonmonetary damages as a result of injuries caused by other drivers.

If you wish to change the tort option that currently applies to your policy, you must notify your agent, broker or company and request and complete the appropriate form.

(c) **Notice of premium discounts**—Except where the commissioner has determined that an insurer may omit a discount because the discount is duplicative of other discounts or is specifically reflected in the insurer's experience, at the time of application for original coverage and every renewal thereafter, an insurer must provide to an insured a notice stating that discounts are available for drivers who meet the requirements of sections 1799 (relating to restraint system), 1799.1 (relating to antitheft devices) and 1799.2 (relating to driver improvement course discounts).

(d) **Additional information**—Upon an oral or written request, an insurer subject to this chapter shall provide to the requestor information on the requestor's cost to purchase from the insurer the minimum requested automobile insurance coverages under either of the two tort options described in subsection (b). These requirements shall include the request for and provision of information by telephone.

75 Pa.C.S.A. § 1791.1.

Pa.Super. 492, 494–496, 680 A.2d 873, 875 (1996), *appeal denied,* 548 Pa. 619, 693 A.2d 589 (1997), *quoting Motorists Ins. Cos. v. Emig,* 444 Pa.Super. 524, 543–545, 664 A.2d 559, 569–570 (1995).

### D.

¶ 14 The proper relationship of § 1731 and § 1734 in a situation involving reduced UM or UIM coverage (and not complete rejection of either coverage) is one of first impression. As the following overview of the relevant case law reflects, both the Supreme Court and this Court have had the opportunity to interpret 75 Pa.C.S.A. §§ 1731, 1791 and 1791.1. Yet, neither Court has had to answer the question of whether policies issued under § 1734 must comply with the technical requirements of § 1731 in order to effect a valid election of reduced UM/UIM coverages under § 1734. Thus, we review existing case law so that we are properly guided in our decision regarding whether an insurer of a policy under § 1734 must comply with the requirements of § 1731 and, if it fails to do so, whether the MVFRL provides for a remedy of contract reformation to the bodily injury liability benefits.

### (1)

¶ 15 The Supreme Court has examined §§ 1731 and 1791 in three cases. The first case, *Salazar v. Allstate Ins. Co.,* 549 Pa. 658, 702 A.2d 1038 (1997), focused on the requirements of 75 Pa.C.S.A. §§ 1791.1 and 1731. The Court addressed whether an insurer who fails to include the notice required of § 1791.1 is required to pay full UM benefits. The *Salazar* claimants were resident relatives of the named insured, Ms. Brown, who had rejected UM coverage in her initial application for insurance. When Ms. Brown renewed the policy, Allstate failed to include the § 1791.1 notice. Claimants argued that this violation of the statutory requirements entitled them to a remedy of UM benefits equal to the bodily injury liability benefits.

¶ 16 The Court held that Allstate had not complied with § 1791.1 but refused to

order the requested remedy. The Court concluded that, when §§ 1731, 1791 and 1791.1 are read *in pari materia,* an insurer is required by § 1791.1 to provide notice on renewal forms that informs the named insured of his or her options at the time of renewal concerning the purchase of UM/UIM coverage. *Id.* at 662–667, 702 A.2d at 1041–1043. The Court, however, refused to order the requested remedy because the MVFRL did not provide for a remedy for an insurer's failure to comply with the notice requirements of § 1791.1. *Id.* at 668, 702 A.2d at 1044. The Court explained:

> While we recognize that section 1791.1 requires that an insurer must provide specific information to the insured at the time of renewal, the legislature has not provided in the MVFRL any enforcement mechanism regarding this requirement.

*Id.* at 670, 702 A.2d at 1044.

¶ 17 In 1998, the Supreme Court addressed § 1731 in the context of the "limited tort" option in two cases. The first case was *Rump v. Aetna Cas. & Sur. Co.,* 551 Pa. 339, 710 A.2d 1093 (1998), where the Court ruled on the interrelationship of §§ 1705(d)(1) and 1731(d)(2) of the MVFRL. Section 1705(d)(1) states that a person who elects "limited tort" remains eligible to seek compensation for economic loss sustained in a motor vehicle accident caused by the fault of another. 75 Pa. C.S.A. § 1705(d)(1). Such person, however, is not eligible to seek non-economic damages for such accident except where the person at fault:

> (ii) is operating a motor vehicle registered in another state [or]

> (iv) has not maintained financial responsibility as required by this chapter, **provided that nothing in this paragraph shall affect the limitation of section 1731(d)(2)** (relating to availability, scope and amount of coverage).

*Id.* (emphasis added). Section 1731(d)(2) provides:

A person precluded from maintaining an action for noneconomic damages under section 1705 (relating to election of tort options) may not recover from uninsured motorist coverage or underinsured motorist coverage for noneconomic damages.

¶ 18 In *Rump*, an insured selected the "limited tort" option for his automobile insurance policy pursuant to the MVFRL. 710 A.2d at 1095. The insured argued that the § 1705(d)(1), "registered in another state," exception allowed him to recover non-economic damages under the UM provisions of his insurance policy. *Id.* Aetna argued that the § 1705(d)(1)(iv) proviso applied to all exemptions under § 1705(d)(1). *Id.* at 1095–1096.

¶ 19 The Court agreed with Aetna and held that § 1731(d)(2) prevented an insured from recovering non-economic damages under the UM provisions of his own policy when the insured had selected the "limited tort" option.[7] *Id.* at 1097–1098. The Court, applying principles of statutory construction, noted that the "legislative concern over the increasing costs of automobile insurance is the public policy which is to be advanced when interpreting the statutory provisions of the MVFRL." *Id.* at 1096. The Court concluded that:

> By limiting appellant's ability to recover such damages, this Court is holding appellant to his voluntary choice of limiting his ability to recover such damages in return for a reduced insurance premium.

*Id.* at 1098.

¶ 20 The other "limited tort" case is *Donnelly v. Bauer*, 553 Pa. 596, 720 A.2d

447 (1998), where the Court ruled on the interrelationship of §§ 1705(a)(1) and (4) of the MVFRL. Section 1705 provides in relevant part:

(a) **Financial responsibility requirements.-**

(1) Each insurer, not less than 45 days prior to the first renewal of a private passenger motor vehicle liability insurance policy on and after July 1, 1990, shall notify in writing each named insured of the availability of two alternatives of full tort insurance and limited tort insurance described in subsections (c) and (d). The notice shall be a standardized form adopted by the Commissioner and shall include the following language:

. . .

(4) Each insurer, prior to the first issuance of a private passenger motor vehicle liability insurance policy on and after July 1, 1990, shall provide each applicant with the notice required by paragraph (1). A policy may not be issued until the applicant has been provided an opportunity to elect a tort option.[8]

¶ 21 In *Donnelly*, the plaintiffs had purchased limited tort automobile insurance policies, but sought reformation of the policies to give them full tort status. 553 Pa. at 601, 720 A.2d at 449. They claimed that, when they made their limited tort selection in original policies issued after July 1, 1990, they were not given the statutory notice explaining the price differentials between full tort and limited tort

---

7. The *Rump* Court made clear that in making this ruling:

> this does not mean that [an insured] cannot seek noneconomic damages pursuant to 75 Pa.C.S.A. § 1705(d)(1)(ii) and (iv) in a liability action against the tortfeasor. Instead, this ruling limits only [an insured's] ability to seek noneconomic damages from the uninsured motorist provisions of his own automobile insurance policy with Aetna to instances where he suffers a "serious injury."

710 A.2d at 1098 (emphasis in the text).

8. Section 1791.1(b) is similar to § 1705(a)(1). However, § 1791.1(b) does not speak of a first renewal on or after July 1, 1990, or include any requirement that an individual receive information on the premium differential between the available tort options. *Donnelly*, 553 Pa. at 605, 720 A.2d at 451. On the other hand, the parties agreed that § 1791.1(b), "standing alone, only applied to an individual applying for original coverage on or after July 1, 1990." *Id.*

coverage, as mandated by § 1705(a)(4). *Id.* at 605, 720 A.2d at 451. The insurers argued that § 1705(a)(4) did not apply to original purchasers of automobile insurance. *Id.* Rather, the notice of price differentials were to be given under § 1705(a)(4) only to existing policyholders as of July 1, 1990 who desired to have a new policy issued with the tort options rather than wait until their renewal date to receive the tort option. *Id.* at 605–606, 720 A.2d at 451–452.

¶ 22 The *Donnelly* Court agreed with the insureds, holding that insurers must provide proper § 1705 notices to insureds buying original coverage after the effective date of the MVFRL amendments. *Id.* at 607–608, 720 A.2d at 452–453. The Court, however, refused to imply a remedy of full tort coverage. *Id.* at 610, 720 A.2d at 454. Like it did in *Salazar*, the Court noted that the 1990 amendments to the MVFRL were designed by the legislature to "stem the rising cost of insurance in the Commonwealth." *Id.* The Court held that where the MVFRL provides no explicit remedy, the courts cannot imply the remedy of full tort coverage. *Id.* Significantly, the Court said:

> Here, appellants, based on a notice form which provided accurate information on the difference between the tort alternatives, freely chose the limited tort option. In making this free choice, appellants received a greater reduction in their premiums than if they had chosen the full tort option. Appellants were content with this lower premium and their choice until they unfortunately were involved in automobile accidents[.] Now, appellants seek to escape from what they freely chose and paid for in order that they may obtain a full tort recovery. If this Court were to fashion a remedy not expressly provided for in the MVFRL, this Court would essentially contravene the cost containment policy behind the MVFRL because allowing appellants the full tort coverage they

seek would result in giving appellants something for which no individual has paid, which in turn, would result in insurance companies passing on this extra costs [sic] to all other insureds.

*Id.*

### (2)

¶ 23 Our Superior Court has interpreted § 1731, and the valid rejection of UM and/or UIM coverages, in a number of cases. A valid rejection of UM/UIM coverage was addressed in *Lucas*, 680 A.2d 873. There, the insureds signed waiver forms that **rejected** both the UM and the UIM coverage. *Id.* at 875. While the waiver forms contained the language required by § 1731(b) and (c), they were printed on the **same** sheet of paper. *Id.* at 876. Thus, the forms failed to meet the **separate** page requirement of § 1731(c.1).[9] *Id.* at 876–877. The consequence for failure to comply with this mandate was the explicit remedy found in § 1731(c.1), *i.e.*, uninsured and underinsured coverage was to be provided to insureds equal to their bodily injury liability limits. *Id.* at 877.

¶ 24 The separate-page requirement of § 1731(c.1) was also at issue in *Winslow-Quattlebaum v. Maryland Casualty Co.*, 723 A.2d 681 (Pa.Super.1998), *appeal granted*, 742 A.2d 172 (Pa.1999). This Court held that an insured was entitled to UIM coverage because the insurer's **rejection** form for UIM was not on a page **separate** from her rejection of stacked underinsurance coverage limits. *Id.* at 684. The remedy was the § 1731(c.1) remedy of UIM coverage equal to the bodily injury liability limits under the policy. *Id.*

¶ 25 Section 1791 was the focus of *Tukovits v. Prudential Ins. Co. of Am.*, 448 Pa.Super. 540, 672 A.2d 786 (1996), *appeal denied*, 546 Pa. 668, 685 A.2d 547 (1996). The Court first recognized that the § 1791 statutory presumption arises when the insurer's notice complies with § 1791. *Id.* at 789. However, if the insurer's notice does

9. Section 1731(c.1) is set out on pages 843–44, *supra*.

not meet the requirements of § 1791, then the insurer must show waiver "affirmatively expressed in writing by the insured, which must evidence an express agreement or acquiescence on the part of the insured to delete or relinquish this protection." *Id.*, citations omitted. The Court held that the requirements of § 1791 were not met and that the record failed to reflect that the insured had voluntarily and knowingly reduced his UM/UIM coverages. *Id.* at 790.[10]

¶ 26 The Court addressed the **rejection** of UM claims under § 1731 as well as the argument that a rejection under § 1731 was a reduction (albeit to zero) under § 1734 in *National Union Fire Ins. Co. v. Irex Corp.*, 713 A.2d 1145 (Pa.Super.1998). There, an insured's employee rejected UM benefits on waiver forms that neither contained the requisite § 1731 language nor were on separate sheets of paper. *Id.* at 1151. First Union argued that the insured's employer, a sophisticated company, knowingly and voluntarily rejected UM coverage when its vice president signed an endorsement that intended to waive such coverage; therefore, the waiver was valid despite the insurer's violations of § 1731. *Id.* at 1147.

¶ 27 The Court disagreed. It held that the **rejection** waiver forms failed to comply with § 1731 and, therefore, the rejection waiver was void and the remedy was the statutory one of reformation to include UM coverage equal to the policy's bodily injury liability limits. *Id.* at 1151.

¶ 28 National Union then argued that even if this Court found an invalid rejection/waiver of UM coverage pursuant to § 1731, the endorsement executed by the insured's vice president could be classified as an election to **reduce** its UM coverage limits under § 1734. *Id.* at 1151. The Court rejected "this absurd argument and

result." *Id.* It held that an invalid **rejection** of UM coverage cannot be converted into a valid election of **reduced** UM limits because it would circumvent the intent behind the MVFRL. *Id.* at 1153.

¶ 29 The Court then suggested that:

an insured cannot make a valid election to reduce UM/UIM statutory coverage limits under section 1734 unless and until the insured/applicant comports with the requirements set forth in section 1731.

*Id.* As Judge Brosky notes in his concurring Opinion, this statement is *dicta* because it was unnecessary to the disposition of the issues before the *Irex* Court. Accordingly, *Irex* is not binding as precedent in the instant case.

¶ 30 The one Superior Court case dealing directly with § 1734 focused on whether the insured had requested a reduction of coverages **in writing**. *Emig*, 664 A.2d 559. There, the insured signed her original policy application and the requisite waiver for reduced UM/UIM benefits of $15,000/$30,000 ("15/30") pursuant to §§ 1734 and 1791(6). *Id.* at 561. Prior to renewal of the policy, she requested that her UM/UIM benefits be raised to $50,000/$100,000. On renewal, she received a declaration page evidencing renewal of the policy and the increased UM/UIM coverages. *Id.* Five months later, she executed a casualty policy change request form, the purpose of which, among other things, was to add a car, add her new husband as an additional named insured, and reject stacking of UM/UIM coverages. *Id.* She left completely blank the section entitled "UM/UIM REJECTION OR REDUCTION" and did not sign it. Her insurance agent, however, had filled in a section "ADD COVERAGE SAME AS ON POLICY" with "x"s, the word "reduce" and the

10. *See also Insurance Co. v. Miller*, 426 Pa.Super. 519, 521–523, 627 A.2d 797, 798 (1993) (insurer who failed to provide the § 1791 notice or the § 1731 forms and notices for rejection of UM/UIM coverages violated the MVFRL and must provide the full coverage under § 1731); *Botsko v. Donegal Mut. Ins. Co.*, 423 Pa.Super. 41, 620 A.2d 30 (1993) (insurer who failed to provide the § 1791 notice violated the MVFRL and must provide full coverage), *appeal denied*, 536 Pa. 624, 637 A.2d 284 (1993).

numbers "15" and "30". *Id.* at 564. Also, the insured had signed the policy change form at the end. *Id.* at 565.

¶ 31 The Court ruled that the writing requirement of § 1734 had not been met because the insured had not requested **in writing** that UM/UIM coverages be reduced. *Id.* at 565–566. Her agent, therefore, had no authorization to make the reductions. *Id.* at 565. The Court then concluded that even if the requirements of § 1791 were met, the § 1791 presumption did not trigger because the writing requirement of § 1734 was not met. *Id.* at 567–570.

### III

■ ¶ 32 Erie first contends that the trial court erred in granting judgment on the pleadings for Appellees because the statutory requirements of § 1734 had been met, *i.e.,* Appellee signed a writing requesting reduced UM/UIM coverage under § 1734. Therefore, Appellees' election for reduced benefits was valid and the fact that both elections were on the same sheet paper is irrelevant because § 1734 has no requirement that reduction elections be placed on separate sheets of paper.

¶ 33 We first look to the language of § 1734 and construe the words of the statute according to their plain meaning:

**Request for lower limits of coverage**

A named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury.

The plain meaning contains no standards concerning the language or form that a named insured uses to "request in writing" the issuance of reduced UM/UIM coverages. Since the words of § 1734 are clear and unambiguous, we cannot disregard them under the pretext of pursuing the spirit of the statute. *Grom,* 672 A.2d at 825.

■ ¶ 34 Assuming that an ambiguity is said to exist, we ascertain legislative intent by reviewing: the necessity of the law; the object to be attained by the law; the circumstances under which the law was enacted; and the mischief to be remedied by the law. The 1990 amendments to the MVFRL reflect that the "legislative concern over the increasing costs of automobile insurance is the public policy which is to be advanced when interpreting the statutory provisions of the MVFRL." *Rump,* 710 A.2d at 1096; *see also Donnelly,* 720 A.2d at 452–453. The issue of whether the writing is sufficient under § 1734 is not before us. Since the 1990 amendments were designed to stem the rising cost of insurance in Pennsylvania, and since there is no express legislative intent to incorporate the § 1731 requirements into § 1734, we will not do what the legislature has not done. Our duty to interpret statutes does not include the right to add provisions that the legislature has omitted. Thus, we conclude that the separate sheet requirement of § 1731 is not a requirement of § 1734. Erie's claim has merit.

■ ¶ 35 Erie next argues that even if the insurer must comply with § 1731 in addition to § 1734 before providing UM/UIM coverage limits less than the bodily injury liability limits of the policy, the MVFRL does not provide a remedy requiring reformation of the policy to provide more coverage than was purchased.[11]

---

11. A federal district court in a recent case, *Nationwide Mutual Ins. Co. v. Buffetta,* 1999 WL 740395 (E.D.Pa. Sep.20, 1999), was faced with this issue. It concluded that the requirements of § 1731 were **not** incorporated into § 1734. The court noted that § 1734 was revised in 1990 to delete a remedy clause. The earlier remedy clause in § 1734 followed the present language in § 1734 and stated:

... If the named insured has selected uninsured and underinsured motorist coverage in connection with a policy previously issued to him b[y] the same insurer under section 1731, the coverages offered need not be provided in excess of the limits of liability previously issued for uninsured and underinsured motorist coverage unless the

¶ 36 In both *Rump* and *Donnelly*, our Supreme Court held each insured to his "voluntary choice of limiting his ability to recover such damages in return for a reduced insurance premium." *Rump*, 710 A.2d at 1098; *see also Donnelly*, 720 A.2d at 454. Importantly, the Supreme Court held that where the MVFRL provides no explicit remedy, the courts cannot imply the remedy of full tort coverage. *Id.* Significantly, the Court said:

> Here, appellants, based on a notice form which provided accurate information . . . freely chose the limited tort option. In making this free choice, appellants received a greater reduction in their premiums than if they had chosen the full tort option. Appellants were content with this lower premium and their choice until they unfortunately were involved in automobile accidents[.] If this Court were to fashion a remedy not expressly provided for in the MVFRL, this Court would essentially contravene the cost containment policy behind the MVFRL because allowing appellants the full tort coverage they seek would result in giving appellants something for which no individual has paid, which in turn, would result in insurance companies passing on this extra costs [sic] to all other insureds.

*Donnelly*, 720 A.2d at 454 (footnote omitted). The same analysis applies here.[12]

¶ 37 Our conclusion is consistent with our own precedent. All except one case dealt with §§ 1731 and 1791. As we explained above, § 1731 contains explicit statutory requirements and an explicit remedy for failure to comport with the statutory requirements. *See Lucas*, 680 A.2d at 876–877; *Winslow–Quattlebaum*, 723 A.2d at 684; *Tukovits*, 672 A.2d at 790; and *Irex*, 713 A.2d at 1151–1153.[13]

¶ 38 Only one case addressed § 1734 and the problem there was the absence of a writing. Thus, the explicit language of § 1734 was not met. *Emig*, 664 A.2d at 567–570. Here, the writing requirement is not disputed. Therefore, we conclude that when there is no explicit statutory remedy, we will not create one by judicial interpretation. Erie's second claim also has merit.

¶ 39 Order reversed. Remanded for further proceedings. Jurisdiction relinquished.

¶ 40 BROSKY, J., files a Concurring Opinion.

BROSKY, J., concurring.

¶ 1 I believe that much of the majority's Opinion is a valid review of current insurance decisions, but that the majority fails to adequately address the problem at hand. I write separately to express my concern about the impact of the panel decision in *National Union Fire Insurance Co. v. Irex Corp.*, 713 A.2d 1145 (Pa.Super.1998), on this case.

¶ 2 The majority treats the issue before us as "[t]he proper relationship of § 1731 and § 1734 in a situation involving reduced UM or UIM coverage (and not complete

---

named insured requests in writing higher limits of liability for those coverages.
*Buffetta, supra* at *2, quoting 75 Pa.C.S.A. § 1734, prior to amendment of July 1, 1990. The *Buffetta* Court reasoned that the transfer of the waiver language to § 1731 reflected a legislative intent that no remedy existed for failure to comply with § 1734.

**12.** Recently, in *Booze v. Allstate Ins. Co.*, 750 A.2d 877 (Pa.Super.2000) this Court held that an insured cannot resort to the Pennsylvania Bad Faith Statute, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, or the Pennsylvania Unfair Insurance

Practices Act to obtain full tort coverage where an insurer fails to comply with § 1705. After reviewing *Donnelly*'s cost-containment rationale and its holding that no remedy existed under the MVFRL, we held that no remedy exists under any other statute. *Id.* at ¶ 13, 720 A.2d 447.

**13.** Since the *Irex* Court was not called upon to decide what the requirements are for § 1734 when not viewed as a subterfuge to the requirements of § 1731, we will not view *Irex* as controlling on that issue.

rejection of either coverage)". The majority states that this is an issue of first impression. That is not quite an accurate description of the question with which we are faced in this appeal. The situation before us is one in which the trial judge, perceiving himself bound by the decision in *Irex*, granted judgment on the pleadings in favor of Appellees/insureds in this declaratory judgment action brought by Appellees. Thus, the matter that we must consider is whether the trial judge erred in granting judgment on the pleadings in favor of Appellees on the basis of *Irex*. If he did err in his reasoning but properly granted judgment on the pleadings, we could still affirm on other grounds.

¶ 3 As the majority Opinion indicates, the trial court may grant judgment on the pleadings only where the moving party's right to succeed is certain and the case is so free from doubt that trial would be a fruitless exercise. *Kafando v. State Farm Mut. Auto. Ins. Co.*, 704 A.2d 675, 676 (Pa.Super.1998). Our standard of review is to determine whether the trial court's decision to grant judgment on the pleadings was based on a clear error of law or whether there were facts disclosed by the pleadings that should properly go to a jury. *Kelly v. Nationwide Ins. Co.*, 414 Pa.Super. 6, 8–10, 606 A.2d 470, 471 (1992).

¶ 4 I would find that the trial judge erred in granting judgment on the pleadings, but not for exactly the reasons articulated by the majority Opinion. I would conclude that the trial judge, relying on *dicta* in *Irex*, improperly determined that Appellee's written request to reduce was inoperative under section 1734. Further, I find that judgment on the pleadings in favor of Appellees should not have been granted on any other grounds.

¶ 5 Here, the named insured, Robert A. Lewis, signed a written request for reduced coverage for uninsured motorist (UM) and underinsured motorist (UIM) benefits coverages. The form that Appellant Erie provided to Robert A. Lewis regarding UM and UIM coverage options

had four separate provisions. These provisions were for rejection of UM and UIM benefits coverage and for reduced limits of UM and UIM benefits coverage. They were all set forth on the same sheet of paper. Robert A. Lewis signed and dated only the portions pertaining to a request for reduced coverage for UM and UIM benefits. As to both UM and UIM, he wrote in $50,000 each person and $100,000 each accident.

¶ 6 After his son, a resident relative covered as an insured under the policy at issue, was injured and was dissatisfied with the amount of the reduced coverage, Robert A. Lewis sought to avoid his election of reduced UM and UIM coverage, urging it was invalid. The invalidity Appellees asserted was that the writing Robert A. Lewis signed was not on separate pages. Appellees sought to have the contract reformed to provide the policy's bodily injury liability coverage of $500,000 per person and $500,000 per accident, with the stacking option applicable. Appellant Erie maintained that the named insured, Robert A. Lewis, elected to have reduced coverage for UM and UIM benefits under section 1734 of the MVFRL and that his written request was in compliance with that section.

¶ 7 Section 1734 of the MVFRL provides:

> § 1734. Request for lower limits of coverage
>
> A named insured may request in writing the issuance of coverages under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury.

75 Pa.C.S.A. § 1734. Two types of coverage that are included in section 1731 of the MVFRL are UM and UIM benefits coverage.

¶ 8 There is no requirement set forth in section 1734 that the request for reduced UM/UIM benefits coverage be made on separate pages. Appellees urged, howev-

er, that the requirement for separate pages set forth in section 1731(c.1), regarding an insured's **waiver** of UM/UIM benefits coverage, must be met with regard to section 1734 written requests to reduce such coverage. Section 1731(c.1) provides, with regard to waiver forms, that insurers must print rejection forms for UM and UIM benefits coverages on separate sheets in prominent type and location. Further, section 1731(c.1) provides that, if the insurer fails to produce a valid rejection form, UM or UIM coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits.

¶ 9 The requirements of section 1734 were directly addressed by a panel of this Court in *Motorists Insurance Companies v. Emig*, 444 Pa.Super. 524, 664 A.2d 559 (1995). In *Emig*, which is accurately explained by the majority Opinion, the insurer was attempting to avoid coverage for UIM benefits in the amount of the policy's bodily injury liability limits and was instead claiming that the insured had elected to reduce the coverage amount for UIM. We concluded that, under section 1734, an insured must have requested reduced limits for UM/UIM coverage in writing for the insurer to provide such coverage in an amount not equal to the policy's bodily injury liability limits. Further, we held the agent's actions were not sufficient to meet the requirements of section 1734; the actions must be by the insured.

¶ 10 *Irex* was a case concerning the rejection of UM benefits coverage. The only issue in *Irex* regarding a construction of section 1734 was whether a rejection of UM benefits coverage that is invalid under section 1731 may be treated as a written request by the insured for a reduction of UM benefits coverage under section 1734. The panel held that it could not, because such a result would be absurd and would allow an insurer to circumvent the requirements of the MVFRL.

¶ 11 The majority in *Irex* went farther in its discussion than simply answering the question before the panel, however, and engaged in an instructional discourse on how sections 1791, 1731, and 1734 should work together. Relying on *Emig*, the majority in *Irex* reasoned that section 1791 of the MVFRL, 75 Pa.C.S.A. § 1791, requires an insurer to provide notice to policy applicants of the types and amounts of coverage required to be offered. The majority stated that the notice to the applicant must explain that the applicant may purchase or reject these coverages, and that the applicant may purchase coverages in higher or lower amounts than those set forth in the 'Important Notice' of section 1791. The majority concluded that there could be no application of the conclusive presumption of section 1791 when the insurer admittedly did not provide section 1791 notice to the applicant.[14]

¶ 12 In arriving at this conclusion, the majority in *Irex* stated the following:

> Construing sections 1731, 1734, and 1791 in *pari materia*, we arrive at the following conclusions. First, one must be given the general notice of benefits and coverages, including UM/UIM coverage, found within section 1791; only then can the insured render a knowing and intelligent election to accept or reject such coverage. In order to effectively accept or reject UIM or UM coverage, an insured must be given sufficient notice provided in section 1731. This notice requires an insurer to strictly comply with designated statutory language and technical and procedural rules annunciated [sic] in 1731. Only when the insurer has complied with the requirements of section 1731 will we apply the conclusive presumption of 1791. [*Lucas v. Progressive Casualty Ins. Co.*, 451

---

**14.** Section 1791 provides for a presumption that an insured has been advised of the benefits and limits available under the MVFRL if the notice prescribed by section 1791 has been given to the applicant for insurance at the time of the application for original coverage.

Pa.Super. 492, 680 A.2d 873 (1996), *allocatur denied*, 548 Pa. 619, 693 A.2d 589 (1997)].

Second, in order to validly elect lower UM or UIM coverage limits under section 1734, one must first validly elect such coverage by being given notice of the availability, scope and amount of coverage for UIM/UM benefits—again, this notice is specifically provided in section 1731. Thus, in order to effectuate a knowing and intelligent waiver of statutory UM/UIM benefits equal to the bodily injury liability limit of the relevant insurance policy, one must first comply with section 1731. If a valid acceptance is rendered, the insured may then make a knowing and intelligent decision to reduce the amount of available UM/UIM coverage under section 1734. As our court held in *Lucas* and *Emig*, in order to conclusively presume waiver under section 1791, an insurer must strictly comply with sections 1731 and 1734. Logic dictates, then, that in order to reduce coverage, one must have first elected to accept such coverage and been informed of the availability of such coverage and the right to reject or reduce the coverage limit.

*Irex*, 713 A.2d at 1154.

¶ 13 The majority ruled:

[H]aving found that there was no valid section 1731 waiver of UM coverage, that there was no valid section 1734 election of reduced UM coverage, and that there could be no conclusive presumption of section 1791 notice where no section 1791 notice was ever provided, the appellees [Irex, and the estate of the named insured's employee and spouse] are entitled to judgment as a matter of law.

*Irex*, 713 A.2d at 1156.

¶ 14 Judge Schiller, anticipating the problems posed by the ramifications of the decision, filed a Dissenting Opinion in *Irex*. Judge Schiller expressed his belief that nothing in the MVFRL requires that the technical aspects of section 1731 be met as a threshold to an inquiry into whether the requirements of section 1734 are satisfied. Judge Schiller also emphasized that the majority's apparent pronouncement, that an insured cannot elect a reduced amount of UM benefits coverage under section 1734 unless the insurer has met the requisites of section 1731, would have an effect of increasing the insurance costs in the Commonwealth. This is because even those persons who elected to carry reduced UM/UIM coverage under section 1734 would be given the benefit of coverage equal to their policy's bodily injury limits if there was something amiss with the section 1731 notice from the insurer. The insured would reap this windfall, although coverage equal to the policy's bodily injury limits was not selected and purchased by the insured.

¶ 15 In the present case, the insureds are attempting the reverse of the situation in *Emig*. They wish to receive coverage for UM equal to the policy's bodily injury liability limits by asserting the invalidity of the written request that the named insured, Robert A. Lewis, made for reduced UM/UIM benefits coverage, not the invalidity of a writing by the agent. Thus, we are presently confronted squarely by the scenario that Judge Schiller was envisioning in his Dissenting Opinion in *Irex*.

¶ 16 On the basis of language in *Irex*, the trial judge reasoned that a court must first determine that the insurer met the technical requirements for the rejection forms set forth in section 1731. Only then, if the requirements of section 1731 were met, may the court determine whether an insured executed a valid written request to reduce coverage under section 1734. Since the rejection forms provided in this matter were not on separate sheets and therefore did not meet the technical requirements of section 1731(c.1), citing *Irex*, the trial judge did not proceed to analyze whether the insured's written request to reduce his coverage complied with section 1734.

¶ 17 The panel in *Irex* was called upon to address only whether an invalid rejection form could be treated as a valid reduction request. The discussion by the panel of the interplay between sections 1791, 1731, and 1734 went beyond the question of whether an invalid rejection of UM and/or UIM coverage may be treated by the insurer as an election by the insured to reduce coverage under section 1734. The panel's holding was that an invalid rejection form may not be treated by an insurer as a written request to purchase reduced coverage because the insured has not made a decision to accept coverage. The insured has made a decision to reject coverage, but there was something invalid about the rejection forms themselves that invalidates the rejection.

¶ 18 The majority's discussion in *Irex* indicates that the MVFRL requires a "valid acceptance" of UM and/or UIM benefits before a court can examine a reduction election under section 1734. The trial judge interpreted that statement as meaning nothing may be technically amiss with the rejection forms under section 1731 before an applicant or insured can make a written request to reduce coverage for UM and/or UIM benefits under section 1734.

¶ 19 Because the issue of whether an insurance provider must have met the technical requirements of section 1731 for a section 1734 request to reduce coverage to be valid was not before the panel in *Irex*, any ruling on that issue is merely *dicta*. *Tulewicz v. SEPTA*, 529 Pa. 588, 592–594, 606 A.2d 427, 429 (1992) (stating that the Court's comments on an issue not raised or argued by either party before the Court are *dicta*). *See also Commonwealth v. Tilghman*, 543 Pa. 578, 585–586, 673 A.2d 898, 902 (1996), *quoting In re Kenin's Trust Estate*, 343 Pa. 549, 23 A.2d 837 (1942) (stating that in every case, what is actually decided is the law applicable to the particular facts; all other conclusions are but *obiter dicta*).

¶ 20 A panel of this Court is not bound to rely on the *dicta* of another panel in a prior opinion, nor must it follow a decision that never directly addressed the issue presently before a different panel. *See Uguccioni v. USF & G*, 408 Pa.Super. 511, 514–516, 597 A.2d 149, 151 (1991) (Judge Beck, concurring). Although it is understandable that the learned trial judge felt constrained to follow the *dicta* in *Irex*, this panel need not affirm the trial judge's interpretation of the *Irex* decision. The trial judge's decision, while motivated by *stare decisis*, elevated language in *Irex*, giving *dicta* the status of precedent. This was an obvious concern that Judge Schiller foretold in writing his Dissenting Opinion in *Irex*. Although *dicta* may be instructive in predicting the direction that a court is likely to take, "it is not what was meant by precedential authority in our system of jurisprudence." *Commonwealth v. Blouse*, 531 Pa. 167, 175–177, 611 A.2d 1177, 1182 (1992) (Justice Flaherty, dissenting). This panel therefore is not constrained to apply the *dicta* from *Irex* in deciding the issue before us.

¶ 21 The most important point to recognize in the present case is that it is a reduction case and not a rejection case. Despite the efforts of the insurer in *Irex* to cast that case in a different posture, *Irex* was a rejection case. Squarely addressing the question before us, the only applicant/insured who will be exercising the option to request reduced coverage for UM and/or UIM under section 1734 is one who has elected not to reject the coverage in its entirety under section 1731. As I see it, the remedy provision of section 1731 protects against the possibility of an uninformed rejection of coverage and recognizes that an insured may very well reject coverage where he would not have done so had he been fully informed of the consequences of his action. Not only are the same provisions not explicitly provided with respect to section 1734, but also the underlying concern is not presented. Whereas there may be a reasonable concern that coverage was rejected unknowingly, a person who reduces coverage must

first "accept" coverage by choosing not to reject it, then must take an affirmative action to reduce the coverage. This requirement of taking an affirmative step of making a reduction request in writing, along with a designation of the coverage amount desired, provides adequate protection against a reduction request being made "unknowingly".

¶ 22 As illustrated by the present case, an applicant/insured may have been notified of the availability of UM and/or UIM coverages and the option of waiving such coverage, but not on separate pages, and still have decided to accept the coverage. This applicant/insured, armed with the knowledge of the available coverages, may make a knowing and intelligent decision to carry a reduced amount of coverage for UM and/or UIM. There is nothing in the MVFRL that requires the insurer to provide the insured with the bodily injury liability limits of the policy when the applicant/insured subsequently discovers that something was technically amiss with the rejection form that he decided not to sign in any event. As Judge Schiller observed, such a result would run contrary to the intent behind the MVFRL of curbing rising insurance costs. *See Donnelly v. Bauer*, 553 Pa. 596, 610–611, 720 A.2d 447, 454 (1998).

¶ 23 Here, the named insured signed and dated a written request for reduced UM and UIM coverage. Under *Emig*, this was a sufficient reduction request pursuant to section 1734. The law was not clear on the question of the validity of the reduction request pursuant to section 1734 if the technical requirements of section 1731 were not met, however. Although section 1734 itself is concisely worded, there was the *dicta* in *Irex* that led to confusion as to whether this Court had ruled that the requirements of section 1731 must be met before a court may address the validity of a decision to reduce coverage under section 1734. Since the law was unclear, I would find that the trial judge erred in granting judgment on the plead-

ings in favor of Appellees on the basis of *Irex*. Like the majority, I would reverse and remand to the trial court for further proceedings.