**Nationwide Mutual Insurance Co. v. Russick**

C.P. of Bradford County, no. 99CV000072.

*Raymond E. Ginn Jr.,* for plaintiff.
*John T. McLane,* for defendant.

MOTT, *J.,* November 30, 2000—Nationwide Mutual Insurance Company, the plaintiff, commenced this action by filing a complaint seeking declaratory judgment on March 1, 1999. This matter arises out of a motor vehicle accident which occurred on October 8, 1997, in which Nellie Russick, the defendant, while attempting to walk across a public highway, was struck by a vehicle operated by Mahala Reed. At the time of the accident, Mahala Reed was insured under a motor vehicle insurance policy issued by the plaintiff. The policy included liability limits of $50,000 per person, and the plaintiff paid that amount to the defendant.

Thereafter, the defendant made a claim for underinsured motorist benefits under a motor vehicle insurance policy issued by the plaintiff to Raymond Adams. At the time of the accident, the defendant was residing with Raymond Adams at his residence in Sugar Run, Pennsylvania. Under the policy issued to Raymond Adams the defendant would be entitled to claim underinsured motorist benefits if she was a "resident relative" of Raymond Adams. The defendant asserts that at the time of the accident she was the common-law wife of Raymond Adams, and, thus, that she falls within the definition of those provided coverage under the policy.

By way of background, we note that on October 29, 1996, Raymond Adams applied for a motor vehicle insurance policy at the office of the plaintiff's agent, Rodman Azar Insurance, in Tunkhannock, Pennsylvania. Various forms and disclosure statements were furnished

to Raymond Adams in connection with that application. The plaintiff issued the policy to him on November 1, 1996 for a six-month period, and, thereafter, a series of policy renewals were issued at six-month intervals. The policy declarations reflect that Raymond Adams purchased bodily injury liability limits in the amount of $100,000 per person and $300,000 per occurrence. The declarations further reflect that he purchased uninsured motorist and underinsured motorist coverage in the lower amounts of $15,000 per person and $30,000 per occurrence. The defendant alleges that the plaintiff failed to provide all disclosures required by law to enable Raymond Adams to knowingly and voluntarily purchase uninsured and underinsured benefits that were lower than the liability limits of the policy. Therefore, the defendant contends that the motor vehicle insurance policy should be reformed to provide underinsured benefits equal to the bodily injury liability coverage of the policy. Specifically, the defendant alleges that because the plaintiff failed to provide to Raymond Adams, or to obtain his signature upon, forms mandated by 75 Pa.C.S. §1731, his election of underinsured limits lower than the liability limits is ineffective, in that his election was not made in a knowing manner.[1]

In opposition to the foregoing, the plaintiff alleges that Raymond Adams was furnished all disclosures, forms, documentation and information required by statute, and that his election of lower underinsured motorist benefit limits was knowing, effective and valid. More specifi-

---

1. The parties agree that Raymond Adams was not provided, nor did he sign, forms for the rejection of uninsured and underinsured motorist coverage. These forms are set forth in 75 Pa.C.S. §1731.

cally, the plaintiff asserts that section 1731 does not mandate any rejection forms where a named insured does not reject uninsured or underinsured motorist coverage, but only selects lower limits of such coverage. Therefore, the plaintiff alleges that $15,000 is the proper underinsured motorist coverage limit in this case.

On August 24, 2000, the plaintiff filed a motion for judgment on the pleadings, concerning the issue of whether Raymond Adams made a valid election of underinsured motorist coverage limits lower than the liability limits of the policy. For purposes of this motion only, the plaintiff concedes that a common-law marriage existed between the defendant and Raymond Adams, that she falls within the definition of those provided coverage under Raymond Adams' policy, and that she is entitled to recover underinsured benefits under that policy. The motion is now before the court for disposition.

Pursuant to Pa.R.C.P. 1034, a motion for judgment on the pleadings may be brought by any party after the relevant pleadings are closed, but within such time as not to unreasonably delay the trial. The court must enter such judgment or order as is proper on the pleadings. The trial court must treat a motion on the pleadings as if it were a preliminary objection in the nature of a demurrer and in conducting such inquiry the court should confine its consideration to the pleadings. *Del Quadro v. City of Philadelphia,* 293 Pa. Super. 173, 176-77, 437 A.2d 1262, 1263 (1981). In determining whether to grant a demurrer, we must: "resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by demurrer. . . . In order to sustain a demur-

rer, it is essential that the facts of the complaint indicate that its claim may not be sustained and that the law will not permit a recovery. . . . If there is any doubt, it should be resolved by overruling the demurrer." *Mellon Bank N.A. v. Fabinyi,* 437 Pa. Super. 559, 567-68, 650 A.2d 895, 899 (1994). (citations omitted)

"Judgment on the pleadings may be granted only in cases where no facts are at issue and the law is so clear that a trial would be [fruitless]. In addition, the court must view all well [pleaded] facts of the non-moving party as true and grant leave to amend if upon reviewing the pleading the existence of a material fact appears ambiguous." *Smith v. Thomas Jefferson University Hospital,* 424 Pa. Super. 41, 44, 621 A.2d 1030, 1031 (1993). (citations omitted)

Thus, our task here is to resolve whether Raymond Adams' election of lower underinsured motorist benefits was valid and enforceable given the uncontested facts relating to that issue. Again, the defendant contends that the plaintiff's failure to provide the section 1731 rejection notice to Raymond Adams renders null and void his election of underinsured limits lower than the liability limits of the policy. Without that notice, the defendant asserts, Mr. Adams' election could not be a knowing one. Therefore, the defendant asserts that she is entitled to receive underinsured benefits with the same limits as the bodily injury liability coverage provided by the policy. Conversely, the plaintiff argues that the section 1731 rejection form is required only where underinsured coverage is rejected altogether, and that it is not required where, as here, a named insured simply elects lower underinsured limits. Therefore, the plaintiff asserts that Raymond

Adams' election of the lower underinsured motorist benefits was valid pursuant to 75 Pa.C.S. §1734.[2]

The controlling case under these circumstances is *Lewis v. Erie Insurance Exchange,* 753 A.2d 839 (Pa. Super. 2000).[3] There, the Superior Court held that there is no express legislative intent to incorporate the section 1731 requirements into section 1734, and that, therefore, execution of a section 1731 rejection form was not required under circumstances similar to those present here. *Id.* at 850. Moreover, the statutory requirements of section 1734 were met here because on October 29, 1996, Raymond Adams signed a 75 Pa.C.S. §1791 "Important

2. 75 Pa.C.S. §1734 provides:

"A named insured may request in writing the issuance of coverage under section 1731 (relating to availability, scope and amount of coverage) in amounts equal to or less than the limits of liability for bodily injury."

3. The defendant incorrectly relies upon *National Union Fire Insurance Company v. Irex Corporation,* 713 A.2d 1145 (Pa. Super. 1998) (the court addressed the rejection of uninsured claims under section 1731, as well as the argument that a rejection under section 1731 was a reduction to zero under section 1734, where an insured's employee rejected uninsured benefits on waiver forms that neither contained the requisite section 1731 language nor were on separate sheets of paper). The *Irex* court suggested:

"An insured cannot make a valid election to reduce [underinsured] statutory coverage limits under section 1734 unless and until the insured/applicant comports with the requirements set forth in section 1731." *Id.* at 1153.

From our viewpoint, and from the viewpoint of a subsequent Superior Court panel in the *Irex* court's discussion, as to section 1731, is dicta. *Lewis v. Erie Insurance Exchange, supra* at 849. *National Union Fire Insurance Company v. Irex Corporation, supra* at 1153. That discussion was unnecessary to the disposition of the issues before the *Irex* court. Therefore, that discussion is not binding precedent.

notice,"[4] and signed a writing requesting lower under-insured coverage. "The plain meaning [of section 1734] contains no standards concerning the language or form that a named insured uses to 'request in writing' the issuance of reduced [underinsured] coverages." *Id.* Furthermore, the remedy sought by the defendant, *i.e.,* underinsured coverage with the same limits as the bodily injury liability coverage, is not provided for under section 1734. *Id.* at 850-51. Therefore, since it is clear that the plaintiff satisfied the section 1791 and section 1734 mandates, and since it is clear that the law does not permit the remedy sought by the defendant, the motion for judgment on the pleadings will be granted.

Accordingly, we enter the following:

## ORDER

And now, November 30, 2000, in accord with the memorandum opinion filed this date, the plaintiff's motion for judgment on the pleadings is granted. As a result, Raymond Adams' election of underinsured motorist coverage lower than the insurance policy's liability coverage is deemed valid, and shall be given full force and effect.

---

4. "Section 1791 . . . provides general notice of available benefits and limits contained with insurance policies, including medical benefits, extraordinary medical benefits, income loss benefits, accidental death benefits, death benefits, [uninsured], [underinsured], and bodily injury liability coverage. . . . Section 1791, however, does not provide an applicant with the ability to select, reject or reduce the benefits and types of coverages enumerated within its own section. It is presumed that an insured has been advised of the benefits and limits contained within section 1791 if a required notice, in bold print and at least 10-point type, is given to an applicant at the time he or she first applies for insurance coverage, and, pending that no other notice or rejection shall be required." *National Union Fire Insurance v. Irex Corporation, supra* at 1148.